474 S.E.2d 887

**Roger PERSINGER, Plaintiff Below,**

v.

**PEABODY COAL COMPANY, Defendant Below.**

**No. 23023.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 1996.

Decided July 12, 1996.

Roger D. Forman, Mary Glass Newbrough, Forman & Crane, Charleston, for Plaintiff.

Gerard R. Stowers, Michael J. Schessler, Bowles, Rice, McDavid, Graff & Love, Charleston, for Defendant.

WORKMAN, Justice:

This case is before the Court upon the following certified questions posed by the July 26, 1995, order of the United States District Court of the Southern District of West Virginia at Beckley:

May an employee, who has filed a Workers' Compensation claim and who has been awarded benefits by the West Virginia Workers' Compensation Fund, maintain a cause of action against his employer for damages as a result of the employer knowingly filing a false and/or misleading statement with the Fund in opposition to the employee's claim?

If such a cause of action for fraud is available, what damages are available to the employee?

I.

This action arises out of an injury which the Plaintiff, Roger Persinger, claims he sustained on June 17, 1992, while he was employed by the Defendant, Peabody Coal Company ("Peabody") at the Montcoal No. 7 Mine Preparation Plant refuse area as a slate truck driver. According to the accident report filled out by the Plaintiff's supervisor, Don Deskins, in connection with the Plaintiff's report of the injury to him, the Plaintiff was hauling slate from the preparation plant to the site where it was to be dumped, when his truck "hit a bump in the road, the bump jarred him and he hit in the seat solid[,]" due to his air suspension seat deflating completely. During his deposition, Mr. Deskins stated that at the time the Plaintiff reported his injury, the Plaintiff told him that "this was a reoccurrence of an old injury[,]" and that he observed that the Plaintiff "was bent holding his lower back[.]" Despite what the Plaintiff

reported and what Mr. Deskins observed, Mr. Deskins stated that he had doubts regarding the Plaintiff's injuries, because "[b]ack injuries are always suspect to me." Mr. Deskins indicated, however, that he did not convey his doubt regarding the Plaintiff's injury to anyone else.[1] The Plaintiff left work after reporting the incident.

The next morning, the Plaintiff went to Raleigh General Hospital where, upon examination, he was diagnosed as suffering from an acute lumbar sprain. The Plaintiff was given a cane, placed on pain medications, and referred to Dr. George Orphanos. Dr. Orphanos saw the Plaintiff on June 24, 1992, and, based on his examination, noted that "[m]ost probably lumbar sacral sp[r]ain occur[r]ed[.]" The Plaintiff continued to see Dr. Orphanos until January 29, 1993, when he was released from the doctor's care. During Dr. Orphano's treatment of the Plaintiff, the doctor opined that his patient "remained disabled until the time of release" from his care.[2]

On June 18, 1992, the Plaintiff filed a workers' compensation claim with the West Virginia Workers' Compensation Fund ("Fund") regarding his injury. In opposition to the Plaintiff's claim, Steve Farley, the Defendant's Employee Relations Representative, completed the employer's portion of the Workers' Compensation claim and stated on said form that "No known job-related injury occurred on 6–17–92. Please see attached

---

1. This fact is corroborated by notes Stephen D. Farley, the Defendant's Employee Relations Representative, made concerning his conversations with various supervisors at the plant site regarding the Plaintiff's injury. In an entry dated June 18, 1992, Mr. Farley writes that in a discussion he had about the incident with Barry Webb, a Peabody supervisor, he asked Mr. Webb if he knew of anything that would dispute the Plaintiff's claim and Mr. Webb told him he did not have any such knowledge. The only negative reference regarding the Plaintiff's claim was that Mr. Webb told Mr. Farley that the Plaintiff had a reputation for driving fast and Mr. Webb felt that the Plaintiff's driving style could make him more susceptible to such a mishap.

2. The Plaintiff's appendix also contains the report of Dr. Kwan Ho Lee, who, in a letter to the Commissioner of Workers' Compensation, Andrew Richardson, made the following diagnosis regarding the Plaintiff: "Claimant continues to be temporarily and totally disabled due to the compensable condition." The Plaintiff also has been seen by two psychiatrists and has been admitted to St. Albans Psychiatric Hospital to deal with emotional and mental problems that the Plaintiff claims "all relat[e] to the initial unfair actions by Peabody to have his claim denied. . . ."

documentation." [3] The Plaintiff alleges that "[t]here was no information contained in Mr. Farley's notes that would support a denial of Mr. Persinger's work injury." The Plaintiff, through discovery, has also unearthed information in the form of a notarized letter dated July 17, 1994, from Larry D. McKnight, a UMWA Workers' Compensation Representative working at Peabody, which indicated that "Mr Farley told me of an incident concerning Roger Persinger's accident of June 17, 1992. He told me that Mr. Gerald Blair, Compensation Representative of Peabody Coal Co., had conspired with Mr. Bill Pennington, Slate Truck Foreman ..., to deny Mr. Roger Persinger his Compensation Benefits."

The Plaintiff's workers' compensation claim was originally denied. He appealed the decision, however, and was awarded workers' compensation benefits dating back to the date of the injury.[4]

The Plaintiff then filed a civil action for fraud against the Defendant in the United States District Court for the Southern District of West Virginia at Beckley. The Plaintiff alleges in the action that in response to his workers' compensation claim, the Defendant, through its management employees, filed with the Fund a statement which they knew to be false and misleading. The Plaintiff claims that this action caused his claim to

be denied originally, and subsequently caused him "to expend all of his life savings to support his family, to borrow from others and as a consequence suffered serious physical and psychiatric injuries." [5]

The Defendant contends that there is no private cause of action for wrongfully protesting a workers' compensation claim and, even if such a private right of action exists, the Plaintiff has no damages because he ultimately received workers' compensation benefits. Further, the Defendant, indicates in its brief before this Court that even if such a claim exists, that it protested the claim believing the circumstances of the Plaintiff's claim were suspicious and not work-related, because its investigation revealed the seat to be operational and the Plaintiff's description of the accident did not seem to correspond with the physical facts. Moreover, during discovery, the Defendant indicated that it learned that the Plaintiff was assisted in filing his workers' compensation claim by a close friend and union representative, Terry Cameron. Mr. Cameron, who was deposed twice, initially invoked his Fifth Amendment right against self-incrimination and refused to testify during a deposition. He later testified and admitted to removing documents from the Defendant's files related to the truck in which the Plaintiff was injured. Further, Mr. Cameron recently has given a written statement to a fraud investigator

---

3. The attachment consisted of the following letter dated July 8, 1992, from Billy L. Pennington, Top Supervisor:

TO WHOM IT MAY CONCERN:
I supervise the repair and maintenance of the M45 Mack trucks which are used at this facility. Mr. Roger Persinger was operating one of these vehicles, Unit No. 740, on June 17, 1992. I checked Unit 740 after Mr. Persinger allegedly injured himself and there were no mechanical defects in the seat or suspension. All of these vehicles are equipped with specially designed seats which use air to cushion the force of any unexpected blows. Also, the operator of Unit No. 740 on the shifts before and after Mr. Persinger['s] did not complain of anything unusual about the way that the vehicle drove or handled.
I am also responsible for the upkeep of the road that Mr. Persinger traveled on June 17, 1992. This road is well-maintained and receives attention on a daily basis to ensure that

it stays that way. There were three other trucks using that road on June 17, 1992, and none of these vehicle's operators complained about any holes or other defects in the road's surface that day.

4. The Plaintiff received over $95,000 in workers' compensation benefits.

5. By order dated November 28, 1994, emanating from a motion to compel Defendant to produce certain documents requested by the Plaintiff, the district court found the following:

The court has also scrutinized the Item 1 documents for any light they may shed on plaintiff's assertion of fraud. The court finds that plaintiff has made out a *prima facie* showing of fraud by one or more of Peabody's employees in connection with Mr. Persinger's Workers' Compensation claim.

working for the Fund wherein he admits that he and the Plaintiff set out to defraud the Fund when the Plaintiff hurt his back at home by conspiring to make the injury appear to be work-related.

The district court has denied, without prejudice, the Defendant's motion for summary judgment with regard to the Plaintiff's cause of action in fraud. Based on our review of the record, the parties' briefs and arguments, and all other matters submitted before this Court, we find that an employee can maintain a private cause of action in fraud against his employer for damages as a result of the employer's knowingly and intentionally filing a false statement with the Fund in opposition to the employee's claim.

## II.

The first certified question concerns whether a private cause of action in fraud for damages exists in favor of an employee who alleges that his employer knowingly filed a false or misleading statement with the Fund in opposition to the employee's claim, even though the employee was ultimately awarded benefits from the Fund. The Plaintiff argues that West Virginia Code § 23–2–6 (1994), which grants an exemption from damages arising out of common law actions to employers who contribute to the Fund, removes the cloak of immunity where an employer fails to comply fully with all the provisions of chap-

ter 23 of the West Virginia Code.[6] *See* W.Va. Code § 23–2–6. The Plaintiff asserts that the Defendant did not fully comply with the provisions in chapter 23 when it submitted a false statement to the Fund in contravention of West Virginia Code § 23–1–16 (1991).[7] The Plaintiff further maintains that, assuming arguendo, that the Defendant does not automatically lose the immunity granted under West Virginia Code § 23–2–6, the Defendant's fraudulent actions nonetheless place it outside the workers' compensation immunity bar regarding civil actions. Conversely, the Defendant argues that the remedies against an employer are strictly limited and governed by statute. Thus, the Defendant asserts that the Plaintiff's claim of fraud arising from the alleged submission of false or misleading documents is not permitted by statute. Moreover, the Defendant contends that a common law suit for fraud against it is unnecessary because an adequate remedy is provided by protest and sanctions administered by the Fund.[8]

■ We begin by examining West Virginia Code § 23–2–6 which provides that

> *[a]ny employer* subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided *shall not be liable to respond in damages at common law or by*

---

6. *See* W.Va.Code §§ 23–1–1 to –6–1 (1994).

7. West Virginia Code § 23–1–16 provides, in pertinent part:

   Any person or firm, or the officer of any corporation, who knowingly makes a false report or statement under oath, affidavit or certification respecting any information required by the commissioner, or who shall knowingly testify falsely in any proceeding before the commissioner, shall be considered guilty of perjury, and, upon conviction thereof, shall be punished as provided by law.

   *Id.* We note that West Virginia Code § 23–1–16 was amended in 1993 and 1995. The pertinent 1993 amendments essentially changed the language in the 1991 statute that the individual submitting the false information "shall be considered guilty of perjury" to "shall be considered guilty of a felony, and, upon conviction thereof,

shall be fined not less than one thousand dollars and not more than ten thousand dollars or confined in the penitentiary for not more than three years, or both." *See* W.Va.Code § 23–1–16 (1993). The 1995 amendments once again change the applicable penalties. *See* W. Va.Code § 23–1–16(b) (Supp.1995). We use the 1991 version of the statute since the alleged false misrepresentations to the commissioner occurred in 1992.

8. Upon a review of the record and the pertinent case law, we find no merit to the Defendant's contention that the Plaintiff is attempting to circumvent the Defendant's statutory workers' compensation immunity by alleging fraud in handling the claim under what the Defendant alleges is a "dual capacity theory." *See Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73 (1985).

*statute for the injury*[9] *or death of any employee,* however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and *shall have complied fully with all other provisions of this chapter.*

*Id.* (footnote added) (emphasis added). It is undisputed that the result of the above-mentioned statute is that it provides "statutory immunity from suit for those employers who either subscribe to the West Virginia Workers' Compensation Fund ... or elect to be a self-insurer *and comply fully with the requirements of the Act.*"[10] *Smith v. Monsanto Co.,* 822 F.Supp. 327, 329 (S.D.W.Va.1992) (emphasis added). "The Workmen's Compensation Act was designed to remove *negligently* caused industrial accidents from the common law tort system." *Mandolidis v. Elkins Indus. Inc.,* 161 W.Va. 695, 700, 246 S.E.2d 907, 911 (1978), *superseded by statute as stated in Handley v. Union Carbide Corp.,* 804 F.2d 265 (4th Cir.1986). "The benefits of this system accrue both to the employer, who is relieved from common-law tort liability for *negligently* inflicted injuries, and to the employee, who is assured prompt payment of benefits." *Meadows v. Lewis,* 172 W.Va. 457, 469, 307 S.E.2d 625, 638 (1983) (emphasis added).

■ It is clear that worker's compensation is the exclusive remedy when an employee is negligently injured in the workplace. The Plaintiff in the instant case, however, is not attempting to recover damages for his initial injury that occurred during the course of his employment. Instead, according to the amended complaint, the Plaintiff seeks compensatory and punitive damages for harm he allegedly suffered from "Peabody Coal Company, through its management employees,

fil[ing] with the Workers' Compensation Fund a statement which they knew to be false and misleading[,]" which resulted in the Fund originally denying him benefits "causing ... [him] to go without income or benefits for over one year and forcing ... [him] at his own expense to hire an attorney." Because the issue of whether a private cause of action in fraud can be maintained by an employee against an employer in light of the exclusive remedy provision set forth in West Virginia Code § 23–2–6 is one of first impression, we examine how scholars and other jurisdictions have dealt with this issue.

Generally,

> it might seem self-evident that the exclusive-remedy provision would never apply to such torts as ... fraud, deceit, [and] malicious misrepresentation.... The reason is that ordinarily these torts would not come within the basic coverage formula of the typical workmen's compensation act: "personal injury by accident arising out of and in the course of employment." But the matter is complicated by the fact that occasionally a tort of this type will become intertwined with a compensable injury in some way. The question then becomes a closer one. It is not whether the tort action will lie when no workmen's compensation claim is possible, but whether a tort action will lie when a compensation claim is also possible, and indeed may have been filed and granted.

2A Arthur Larson and Lex K. Larson, *The Law of Workmen's Compensation* § 68.30 at 13–134–135 (1995) (footnotes omitted). Where the tort action is one of fraud or deceit, and "the alleged deceit has acted, not upon plaintiff's physical condition, but upon his legal rights under the compensation act[,] [t]he majority of decisions, but by no means all, have held that this gives rise to a sepa-

---

9. While the statute does not expressly state that the injury or death must be work-related, it is certainly implied.

10. As the district court in *Smith v. Monsanto Co.,* 822 F.Supp. 327 (S.D.W.Va.1992), stated, "[u]nder the Act, an employer who is otherwise entitled to immunity under § 23–2–6 may lose im-

munity in only one of two ways: (1) by defaulting in payments required by the Act or otherwise failing to comply with the provisions of the Act, or (2) by deliberately intending to produce injury or death to the employee." 822 F.Supp. at 330 (citation omitted).

rate cause of action free of the exclusiveness bar." Larson, *supra* § 68.32(b) at 13–147 to –152 (footnotes omitted); *see* Michael A. Rosenhouse, Annotation, *Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due*, 8 A.L.R.4th 902 (1981 & Supp.1995); Erwin S. Barbre, Annotation, *Workmen's Compensation Provision as Precluding Employee's Action Against Employer for Fraud, False Imprisonment, Defamation, or the Like*, 46 A.L.R.3d 1279 (1972 & Supp.1995).

Included in those jurisdictions which have held that a separate cause of action exits is the Supreme Court of Montana's decision in *Birkenbuel v. Montana State Compensation Insurance Fund*, 212 Mont. 139, 687 P.2d 700 (1984). The *Birkenbuel* case, while not directly on point, is instructive in determining the issue before us. In that case, the plaintiff suffered a compensable injury during the course of his employment and the Montana State Compensation Insurance Fund ("State Fund") paid the plaintiff temporary total disability benefits during his healing period. *Id.* 687 P.2d at 701. Three years after the accident, the State Fund determined that the plaintiff had achieved his maximum healing and sought to negotiate a settlement. While the State Fund proposed to settle for $6,000, based on a 20% impairment, the plaintiff sought $35,000. The State Fund counteroffered for $17,325. The plaintiff initially rejected this offer, but then accepted it. When the plaintiff went to the State Fund office to accept the money, however, the State Fund declined to honor the $17,325 offer, taking "exception to the strongly worded cover letter drafted by claimant's counsel[,]" prepared in connection with the plaintiff's acceptance of the offer. *Id.*

In upholding a private cause of action by the employee against the State Fund for its failure to negotiate in good faith and fraudulent and intentional infliction of emotional distress, the Supreme Court of Montana stated that

[w]e reaffirm our approval of those decisions upholding the right of a worker to assert a separate claim for tortious conduct occurring outside the employment relationship and during the processing and settlement of a workers' compensation claim. *Stafford v. Westchester Fire Ins. Co. of N.Y., Inc.* (Alaska 1974), 526 P.2d 37 [, overruled on other grounds by *Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976) ]; *Gibson v. Nat. Ben Franklin Ins. Co.* (Me.1978), 387 A.2d 220; *Hollman v. Liberty Mut. Ins. Co.* (8th Cir.1983), 712 F.2d 1259 (interpreting South Dakota law); *Coleman v. American Universal Ins. Co.* (1979), 86 Wis.2d 615, 273 N.W.2d 220; *Martin v. Travelers Insurance Company* (1st Cir.1974), 497 F.2d 329.

687 P.2d at 703–04. The court further explained that

[t]he alleged tortious conduct did not arise within the employment relationship of Birkenbuel and his employer. The emotional injury described in the complaint occurred subsequent in time to this employment and is not work-related.

Our statutory system of workers' compensation does not provide workers with benefits for injury sustained from settlement negotiations with an insurance carrier. As such, the exclusivity provisions of the Workers' Compensation Act do not bar independent actions for tortious conduct arising from such interactions. Any contrary interpretation would result in the inequity whereby workers surrendered more protection than they received when our statutory system of compensation was adopted.

*Id.* at 702.

The Court of Appeals of Indiana issued a similar ruling in *Baker v. American States Insurance Co.*, 428 N.E.2d 1342 (Ind.Ct.App. 1981). In *Baker*, the workers' compensation claimant brought action against the employer's compensation carrier [11] averring that he was entitled to workmen's compensation benefits for both temporary total disability and

---

11. Under the Indiana workers' compensation statute, "for the purposes of the Workmen's

Compensation Act, the term 'employer' includes

permanent partial impairment for an injury to his left eye suffered during the course of his employment. The claimant alleged that adjusters for American States fraudulently and knowingly made false statements to him to the effect that doctors who had examined his eye had rated the impairment at 24.5%, when, in reality, the impairment rating given the eye was 62%. The claimant maintained that the insurer made the false statements to induce him to settle his compensation claim for less than the amount he was entitled to receive. *Id.* at 1344. The claimant asserted that as a result of the fraud, he had to employ an attorney to file and prosecute his claim with the Industrial Board for benefits and thus incurred attorney fees which he would not have otherwise incurred. *Id.* at 1345. It was not until after he filed his claim that he learned the true impairment rating of his eye and was awarded benefits on the basis of the 62% permanent partial impairment. *Id.*

The *Baker* court, in considering whether the Indiana Workmen's Compensation Act was the exclusive remedy for the claimant, reasoned that

> [a]s we suggested before, I[nd.] C[ode][§ ] 22–3–2–6 speaks to personal injury or death by accident on the job, but it does not purport to prohibit actions by an employee against his employer's workmen's compensation insurance carrier for fraudulent misrepresentations made while the employee and the insurer are attempting to settle the claim. Baker [the claimant] could not have brought a lawsuit against his employer for damages for his eye injury. However, the alleged fraudulent misrepresentation by American States of Baker's impairment rating is not the kind of harm for which the Workmen's Compensation Act was calculated to compensate. . . .

428 N.E.2d at 1347 (citation omitted); [12] *accord Reed v. Hartford Accident & Indem.*

the employer's insurer where applicable." 428 N.E.2d at 1346 (citing Ind.Code § 22–3–6–1(a)).

**12.** The *Baker* court did conclude that Indiana Code § 22–3–4–12 which provides for an award of attorney's fees where the employer or its in-

*Co.*, 367 F.Supp. 134, 135 (E.D.Pa.1973) (finding that employee could maintain common law claims against employer's workers' compensation carrier based in part on carrier filing false, fraudulent and perjured modification petition which caused claimant's total disability benefits to discontinue since "[t]he exclusivity of the [Workmen's Compensation] Act is irrelevant to causes of action which are not covered by it"). The court further stated that "[i]f Baker's allegations regarding the behavior of the adjusters for American States prove to be true, then it is in the public interest of this state to discourage such activities and to compensate the victim for resulting injury." 428 N.E.2d at 1347.

Likewise, in *Griggs v. All–Steel Buildings, Inc.*, 209 Ga.App. 253, 433 S.E.2d 89 (1993), an employee brought action against his former employer and its workers' compensation carrier for damages resulting from the defendants' fraudulent procurement of a settlement agreement where the employee sustained a severe head injury during the course of his employment which resulted in brain damage that left him permanently mentally impaired. *Id.* 433 S.E.2d at 89–90. An agent of the employer's compensation carrier met with the employee concerning a settlement. The employee responded that he wished to contact an attorney and the agent told him that it "was unnecessary as an attorney would only cost him money." *Id.* at 90. The employee proceeded to enter into a settlement agreement with the employer and its compensation carrier, but the defendants failed to advise the State Board of Workers' Compensation about the employee's head injuries, the employee's impaired mental capacity, the employee's request for an attorney, or the carrier's agent's improper advice. *Id.*

In concluding that the employee's fraud claim was not barred by the Georgia Workers' Compensation Act, the *Griggs* court stated

surer has acted in bad faith in adjusting and settling a claim for workmen's compensation benefits was the claimant's exclusive remedy for his request for attorney's fees. 428 N.E.2d at 1347.

[i]t is true, that in general, our workers' compensation law provides an employee's exclusive remedy against his employer for on-the-job injuries and provides benefits to such employee injured "*by accident* arising out of and in the course of employment." Fraud, however, is not an "accident" and the damages resulting therefrom do not arise "out of or in the course of the employment," but rather, result from the intentional misconduct of the defendants subsequent to the physical injuries which gave rise to the original workers' compensation claim.

*Id.* at 90 (quoting, in part, OCGA § 34–9–1(4)) (citation omitted); *see Gibson v. Southern Guar. Ins. Co.,* 623 So.2d 1065, 1066 (Ala.1993) (holding that exclusivity of Workers' Compensation Act barred worker's claims against workers' compensation insurer except those alleging intentional fraud and tort); *Flamm v. Bethlehem Steel Co.,* 18 Misc.2d 154, 185 N.Y.S.2d 136, 138 (N.Y.Sup. Ct.1959), *aff'd,* 10 A.D.2d 881, 202 N.Y.S.2d 222 (1960) (interpreting exclusivity provision of Longshoremen's and Harbor Workers' Compensation Act and finding that where defendant employer and defendant physician conspired to deprive employee of compensation benefits by submitting false and fraudulent medical report to Deputy Commissioner of Compensation which was intended to and did deprive plaintiff of his rights under statute, that "[t]he wrongful interference with and the resultant deprivation of plaintiff's statutory rights constitute a wilful tort against the plaintiff, separate and distinct from the original wrong[]" not barred by Act); *Harris v. Varo, Inc.,* 814 S.W.2d 520, 525–26 (Tex.Ct.App.1991) (finding that exclusive remedy provision of workers' compensation act did not preclude employee from maintaining cause of action against employer for its allegedly fraudulent misrepresentations before Industrial Accident Board concerning its insurance coverage, where employer allegedly misrepresented identity of its workers' compensation carrier with intent to deceive employee and to deprive her from filing claim); *see generally Johns–Manville Prod. Corp. v. Contra Costa Superior Court,* 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948, 955 (1980) (finding allegations sufficient to state cause of action for aggravation of disease against employer notwithstanding workers' compensation law where plaintiff alleged employer fraudulently concealed from him that he was suffering from disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for disease and inducing him to continue working under hazardous conditions); *Millison v. E.I. du Pont de Nemours & Co.,* 101 N.J. 161, 501 A.2d 505 (1985) (finding that although employees are limited to workers' compensation benefits for any initial occupational disease disabilities related to hazards of employment, New Jersey's Workers' Compensation Act does not bar cause of action for aggravation of such illnesses resulting from employer's and company physician's fraudulent concealment of already discovered disabilities regarding asbestos use and exposure).[13]

▮ The common rationale prevalent throughout the decisions which have found that an employee can maintain a cause of action in fraud against an employer outside the realm of workers' compensation exclusivity provision's is to permit recovery when: (1) the injury giving rise to the cause of action is not suffered during the course of employment; and (2) the employer's fraudu-

---

13. We are mindful that there are jurisdictions that have held that under circumstances comparable to those presented in the instant case, workers' compensation still would be the exclusive remedy. *See Yocum v. Phillips Petroleum Co.,* 228 Kan. 216, 612 P.2d 649 (1980) (holding that relief provided under workers' compensation statute was exclusive remedy available to employee and barred employee from maintaining common-law action for fraud against employer where employee sought to set aside compensa- tion settlement award because of employer's fraud in obtaining said settlement); *Gordineer v. Bellotti,* 100 Or.App. 102, 785 P.2d 362, *review denied,* 310 Or. 121, 794 P.2d 793 (1990) (finding that exclusive remedy of workers' compensation act applied to worker's claim that employer furnished false and perjured testimony in workers' compensation hearing, and that employer's testimony resulted in loss of temporary total disability benefits to which employee was entitled).

lent misrepresentation of facts in an attempt to deprive an injured employee of benefits rightfully due him from a previous work-related injury is separate and distinct from any injury envisioned to be encompassed under workers' compensation laws. Because we are persuaded by the reasoning employed in these decisions, we find that West Virginia Code § 23–2–6 only contemplates an exemption of contributing employers from liability for "damages at common law or by statute for the injury or death of any employee" arising out of a negligently-inflicted[14] injury of an employee. *Id.* Absent from this statutory provision is any language evincing that an employer is similarly exempted from liability for the intentional tort of fraudulent misrepresentation. Accordingly, we hold that West Virginia Code § 23–2–6 does not preclude an employee from maintaining a separate and distinct cause of action against an employer for damages as a result of the employer knowingly and intentionally fraudulently misrepresenting facts to the Workers' Compensation Fund that are not only in opposition to the employee's claim, but are made with the intention of depriving the employee of benefits rightfully due him.

■ In recognizing the existence of this type of action, we do not wish to open a Pandora's box of litigation, nor do we wish to infringe upon an employer's right to contest an employee's claim. *See* W.Va.Code §§ 23–4–1b and 23–4–1c (1994).[15] Therefore, we carefully balance the countervailing interests in drafting the parameters for such a cause of action. From the employer's perspective, we are very mindful of the fact that West Virginia Code § 23–4–1b provides, in pertinent part, that

[i]t shall be the duty of every employer to report to the commissioner every injury sustained by any person in his employ.

Such report shall be on forms prescribed by the commissioner; and shall be made within five days of the employer's receipt of the employee's notice of injury.... The employer's report of injury shall include a statement as to whether or not, on the basis of the information then available, the employer disputes the compensability of the injury or objects to the payment of temporary total disability benefits in connection therewith. Such statements by the employer shall not prejudice *the employer's right thereafter to contest the compensability of the injury, or to object to any subsequent finding or award* ....

*Id.* (emphasis added). Moreover, West Virginia Code § 23–4–1c clearly states that "[a]ny party shall have the right to protest the order of the commissioner and obtain an evidentiary hearing as provided in section one [§ 23–5–1], article five of this chapter." W.Va.Code § 23–4–1c(a). Thus, pursuant to West Virginia Code §§ 23–4–1a and 23–4–1c, an employer has a statutory right as a party to a worker's compensation action to contest the compensability of an employee's injury and/or to object to any subsequent finding or award.

Because of the statutory right of the employer, we very narrowly construe the cause of action afforded to any employee who alleges fraudulent misrepresentation against the employer. We find instructive the California Court of Appeal's decision in *Jablonski v. Royal Globe Insurance Co.*, 204 Cal.App.3d 379, 251 Cal.Rptr. 160 (1988). In *Jablonski,* a workers' compensation claimant brought action against a workers' compensation insurer[16] and its agents alleging fraud. The claimant averred in his complaint that the insurer and its agents, who were the insurer's independent claims administrators, were retained by the claimant's employer, Notres Lines, to provide said employer with work-

---

**14.** Obviously, the statute covers work-related injuries where no negligence occurs and civil liability is not at issue.

**15.** West Virginia Code § 23–4–1c was amended in 1994 and 1995; those amendments, however, do not effect the outcome of the present case.

**16.** Under the California workers' compensation scheme, the term employer included insurers for the purpose of third-party suits. *See Jablonski,* 251 Cal.Rptr. at 163.

ers' compensation coverage. The claimant was injured during the course of his employment as a truck driver. The insurer, however, misrepresented the existence of coverage, delayed acting on the claim, and improperly investigated said claim, even though it knew that the claimant was covered under the policy. The claimant further maintained that "[d]efendants knew of documents constituting evidence in plaintiff's workers' compensation case and 'concealed, lost, destroyed or otherwise disposed of' this evidence." *Id.* 251 Cal.Rptr. at 162.

The California court ultimately found that an insurer's fraudulent misrepresentation that no policy existed, made for the purpose of advancing the insurer's economic interest and defeating the injured employee's just entitlement, constitutes the type of outrageous reprehensible conduct which falls outside of permissible boundary of protected behavior by insurer. *Id.* at 167. In reaching this decision, the *Jablonski* court reasoned:

> The sham procedure of asserting the subjective characterization that the acts of the carrier or its agents are "fraudulent, deceitful and intentional" will not suffice. Otherwise, a disgruntled worker could sue the compensation carrier in a court of law merely by alleging that the acts in question were intentional, deceptive, outrageous and fraudulent without alleging specific conduct and how it was carried out. These conclusory pleadings, if permitted, "would make a shambles of the workers' compensation system ..." In short, there must be factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from the ordinary nonperformance of the insurer's statutory duty to provide benefits.

*Id.* at 164. (quoting, in part, *Unruh v. Truck Ins. Exch.*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972)) (citation omitted); *see McCutchen v. Liberty Mut. Ins. Co.*, 699 F.Supp. 701, 706 n. 1 (N.D.Ind.1988) (quoting *Barr Co. v. Safeco Ins. Co.*, 583 F.Supp. 248, 258 (N.D.Ill.1984)) (referring to Federal Rule of Civil Procedure 9(b) which requires allega-

tions of fraud to be pleaded with particularity and stating that the circumstances of fraud which must be particularly averred refer to "'matter[s] such as the time, place, and conten[t]s of the false representations, as well as the identity of those persons involved'"); *Funeral Servs. by Gregory, Inc. v. Bluefield Community Hosp.*, 186 W.Va. 424, 430, 413 S.E.2d 79, 85 (1991), *overruled on other grounds by Courtney v. Courtney*, 190 W.Va. 126, 437 S.E.2d 436 (1993) (stating that "in order to establish fraud, the circumstances must be clearly alleged and proved"); W. Va. R. Civ. P. 9(b) (stating that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity").

The *Jablonski* court likened the type of fraud which must be alleged to "the reprehensible conduct engaged in when the 'insurer intentionally embarks upon a deceitful course of conduct in its investigations which causes injury to the subject of the investigation.'" *Id.* at 167 (quoting *Unruh,* 102 Cal. Rptr. 815, 498 P.2d 1063). Thus, "mere delay in payment or other conduct related to the botched processing of a compensation claim does not cause the insurer to lose its exclusivity defense." 251 Cal.Rptr. at 165; *see Griggs,* 433 S.E.2d at 91 (finding that allegations of fraud give rise to independent cause of action and that allegations of mere delay in payment do not).

■ Based upon the reasoning in *Jablonski* and applying West Virginia Rule of Civil Procedure 9(b), we hold that an employee's cause of action against his/her employer for fraudulent misrepresentation concerning the employee's workers' compensation claim must be pled with particularity and must be supported by factual allegations identifying the employer's particular acts or circumstances which distinguish the intentional tort of fraudulent misrepresentation from the employer's negligent misrepresentation or mere delay in processing or payment of said claim, the latter two of which are not sufficient to support an employee's independent cause of action.

■ More specifically stated, in order for a plaintiff employee to prevail on the

narrowly construed cause of action by the employee against an employer for fraudulent misrepresentation concerning the employee's workers' compensation claim, the employee must (1) plead his or her claim with particularity, specifically identifying the facts and circumstances that constitute the fraudulent misrepresentation, and (2) prove by clear and convincing evidence all essential elements of the claim, including the injury resulting from the fraudulent conduct. A plaintiff employee is not entitled to recover unless the evidence at trial is persuasive enough for both the judge and jury to find substantial, outrageous and reprehensible conduct which falls outside of the permissible boundary of protected behavior under the statute. If the pleadings or evidence adduced is insufficient to establish either of the two factors stated above, the trial court may dismiss the action pursuant to Rule 12(b), Rule 56 or Rule 50 of the West Virginia Rules of Civil Procedure.

Finally, the Defendant in the instant action, relying on West Virginia Code § 23–1–16 (1991), posits that there is no need for a private cause of action because

> [a]ny person or firm or the officer of any corporation, who knowingly makes a false report or statement under oath, affidavit or certification respecting any information required by the commissioner, or who shall knowingly testify falsely in any proceeding before the commissioner, shall be considered guilty of perjury, and, upon conviction thereof, shall be punished as provided by law.

*Id.* The Defendant maintains that the penalties provided for by the statute are the sole remedies available when an employer engages in the type of conduct that the statute prohibits and that since the statute provides no private cause of action or civil remedy against the employer or employee for sub-

mitting allegedly false evidence or claims, then no such action can exist.

We disagree with the Defendant's contentions. Contrary to the Defendant's assertion, we find the lack of any statutory provision regarding a private cause of action for submitting false evidence supportive of the fact that such a cause of action can exist. If the legislature had intended for the statute to supplant such a cause of action, it would have expressly stated that within the statute.

### III.

■ The second certified question concerns what damages are available to the employee asserting a cause of action in fraud. The Plaintiff argues that he is entitled to damages for emotional and psychiatric conditions, aggravation of his work injury, annoyance and inconvenience, in addition to punitive damages and attorney's fees and costs.[17] The Defendant only argues that since the Plaintiff has received all workers' compensation benefits to which he is entitled, he should have no separate cause of action for damages.

■ It is axiomatic that the plaintiff's measure of damages in a cause of action in fraud would be any injury incurred as a result of the defendant's fraudulent conduct. Further guidance in what the damages may encompass is summed up best in *Capper v. Gates,* 193 W.Va. 9, 454 S.E.2d 54 (1994). In *Capper,* a case involving a cause of action in fraud, we stated that in addition to full compensation for all injuries directly or indirectly resulting from the wrong,[18] " '[p]unitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for willfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff....' " *Id.* at 18,

---

17. The Defendant is entitled to an offset for damages which may be awarded in the instant action that have already been paid or will be paid as compensable injuries in the Plaintiff's coincident workers' compensation claim. *See Mooney v. Eastern Assoc. Coal Corp.,* 174 W.Va. 350, 326 S.E.2d 427 (1984).

18. Damages for annoyance and inconvenience are properly included in compensatory damages. *See Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 345–46, 368 S.E.2d 710, 715–16 (1988).

454 S.E.2d at 63 (quoting Syl. Pt. 3, *Chesser ex rel. Hadley v. Hathaway,* 190 W.Va. 594, 439 S.E.2d 459 (1993); Syl. Pt. 1, *O'Brien v. Snodgrass,* 123 W.Va. 483, 16 S.E.2d 621 (1941); Syl. Pt. 4, *Harless v. First Nat'l Bank,* 169 W.Va. 673, 289 S.E.2d 692 (1982)). Further, "[w]here it can be shown by clear and convincing evidence that a defendant has engaged in fraudulent conduct which has injured a plaintiff, recovery of reasonable attorney's fees may be obtained in addition to the damages sustained as a result of the fraudulent conduct." Syl. Pt. 4, *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 425 S.E.2d 144 (1992).

Based on the foregoing, the certified questions from the United States District Court of the Southern District of West Virginia at Beckley are hereby answered. Accordingly, we dismiss this case from the docket of this Court.

Certified questions answered.