Bonnie D. LIVINGSTON, and James Livingston, Plaintiffs,

v.

K–MART CORPORATION, Defendant.

No. Civ.A. 2:97–0689.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 30, 1998.

David S. Skeen, South Charleston, WV, for Plaintiffs.

Joseph S. Beeson and Brent D. Benjamin, Robinson & McElwee, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion for summary judgment on all issues. The motion has been fully briefed and is ripe for decision. For reasons discussed below, the Court **GRANTS** the motion. Also pending is Plaintiff's motion for sanctions, pursuant to *Federal Rule of Civil Procedure* 37. As discussed below, this motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bonnie Livingston worked as a layout associate at the K–Mart store in Beckley, West Virginia from 1986 to January 17, 1994. She alleges that while working at the store she was periodically exposed to spills of various chemicals, including pesticides, which caused pulmonary, neurological and immunological damage.[1] K–Mart acknowledges that spills occurred in the Beckley store while Plaintiff was employed there, including weed killer, ArmorAll, lamp oil, engine oil, shrimp food, fox urine (a hunting product), Black Magic, Malathion, and an unidentified garden chemical.[2] In 1991 Plaintiff filed a formal complaint with the Occupational Safety and Health Administration ("OSHA") about pesticide spills. OSHA inspected the Beckley K–Mart in December 1992 and found no spills, no evidence of employees mixing incompatible chemicals at the time of inspection, and no problems with K–Mart's clean-up procedures, hazard communication training, or provision of personal protective equipment.[3]

---

1. Mrs. Livingston's husband James has a derivative claim for loss of consortium. Hereinafter, singular "Plaintiff" will refer to Mrs. Livingston.

2. All but two of the spills occurred between May and September, 1992. K–Mart blames vandalism for the incidents.

3. OSHA did cite K–Mart for recordkeeping violations and fined K–Mart $350.

In July 1994 Plaintiff filed a Workers' Compensation claim for whole body chemical sensitivity which alleged:

> From June 24, 1991 to Sept. 10, 1993 I have peridically [sic] been exposed to fresh and old pesticide spills in our store. During this time I have seen four different doctors up to Dr. Kostenko. Jan. 17, 1994 I was forced to take a leave of absent (sic) (without pay) due to the severe pain across the cheekbones, headaches, muscle and joint pain and diarrhea. Total hours missed in 1991, over 70, in 1992 total hrs. missed 228, in 1993, 481.25 hrs and in 1994 [illegible] leave of absent [sic].

On the employer's portion of Plaintiff's application for Workers' Compensation benefits, K–Mart employee Kathy Sizemore marked "Yes" in response to the question: "Do You Disagree With Any of the Information provided in Section I or II [for applicant and attending physician to complete]?" Sizemore wrote: "No other associates had these symptoms per Ms. Barnhart." The Workers' Compensation claim was rejected as not compensable on August 26, 1994.[4] This case was filed in Kanawha County Circuit Court on December 6, 1996; K–Mart was served on June 2, 1997; and it removed the case seasonably on July 2, 1997.[5]

Plaintiffs' second amended complaint [6] contains four counts. *Count One* is a claim based upon the deliberate intention exception to Workers' Compensation immunity. *See* W.Va.Code § 23–4–2. *Count Two* alleges fraudulent concealment by K–Mart of workplace hazards from its employees. *Count Three* asserts fraudulent misrepresentation of information and evidence to Workers' Compensation in order to prevent Plaintiff from receiving benefits for occupationally-induced illness. *See Persinger v. Peabody*

---

**4.** Plaintiff protested the denial; however, an Administrative Law Judge affirmed the denial on May 14, 1998, finding that "the weight of the evidence in this claim weighs favorably toward the employer in establishing that the claimant did not suffer a compensable injury in this claim." Workers' Compensation claim no. 94–82508 (May 14, 1998) at 3.

**5.** Defendant also argues that Plaintiff's claims are all time-barred, having accrued at the time of her original injury in June 1991 or, at the latest, July 1994 when Plaintiff filed her Workers' Compensation claim for the same injury.

*West Virginia Code* section 55–2–12 establishes the limitation period for personal injury and other tort actions: "Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues, which is when the injury is inflicted. Syl. pt. 1, *Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986). However, where injury is not immediately known or discoverable, the statute of limitations begins to run when the injury is discovered or should have been discovered by the exercise of due diligence. *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561 (1990).

The Court agrees with Defendant that, were Plaintiffs' claim solely the alleged personal injury inflicted by chemical exposure, that claim would have accrued either at the time of injury or, at the latest, July 8, 1994, when Plaintiff filed her Workers' Compensation claim, containing essentially identical allegations. In that case, the statute of limitations would have run, at the latest, by July 8, 1996, almost six months before this civil action was filed.

Plaintiffs' claims of fraudulent concealment and misrepresentation, however, complicate the limitations problem. Where a cause of action is based on a claim of fraud, "the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury." *Id.* at 321, 400 S.E.2d at 565. With the evidence before it, the Court can only speculate as to when Plaintiff learned of Defendant's alleged misrepresentation and concealment. Had any evidence of such alleged fraud been presented, Plaintiffs would have had a colorable argument that Defendant's fraud prevented (and was intended to prevent) Plaintiffs from learning of the nature and extent of the alleged personal injury as well, so as to extend the time of accrual of that cause of action.

With these concerns in mind, the Court has chosen to determine this case on clear summary judgment principles on the merits rather than relying on statute of limitations arguments, however compellingly and extensively briefed by both parties.

**6.** In its Memorandum Opinion and Order of March 5, 1998, this Court directed Plaintiffs to filed an amended complaint stating the fraudulent misrepresentation claim with particularity and granted Plaintiffs' motion to further amend the complaint. On June 15, 1998 the Court granted Plaintiffs' motion for enlargement of time to file a second amended complaint.

*Coal Co.,* 196 W.Va. 707, 474 S.E.2d 887 (1996). *Count Four*[7] alleges intentional infliction of emotional distress by threats of retaliation against Plaintiff for filing claims and reports regarding conditions at the store and by denial of medical benefits.

## II. ANALYSIS

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omit-

ted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va. 1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the motion for summary judgment.

### B. Deliberate Intention Exception to Workers' Compensation Immunity

Plaintiff alleges occupational exposure to hazardous chemicals injured her, causing chemical sensitivity and reactive airways' disease.[8] Employers who participate in the Workers' Compensation program are generally immune from suit by employees alleging occupational injury. *See* W.Va.Code § 23–2–6 (1994). Only if the employer acted with deliberate intention is such immunity lost. W.Va.Code § 23–4–2(c)(2). Deliberate intention requires proof of all of the following:

> (1) a specific unsafe working condition which presented a high degree of risk and a strong probability of serious injury or death;

> (2) a subjective realization and appreciation on the part of the employer of the specific unsafe working condition;

> (3) the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, specifically applicable to the particular work and working condition involved;

> (4) the employee was intentionally exposed to the specific unsafe working condition; and

7. Misnumbered as a second "III" in the second amended complaint.

8. As reported to Plaintiffs' expert doctor, Plaintiff complained of severe headaches, fatigue, muscle and joint pain, which began in June 1991, and diarrhea, which started in early 1994. She reported her symptoms began in June of 1991 after being exposed to a "bad odor" at work. Def.'s Mot. Summ. J., Ex.S.

(5) the employee sustained serious injuries resulting from the specific unsafe working condition.

*Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 140, 475 S.E.2d 138, 140 (1996); W.Va. Code § 23-4-2(c)(2)(ii).

To survive summary judgment with regard to element one, Plaintiff need only raise a genuine issue of material fact. *Harleysville,* 60 F.3d at 1119. The Court must construe all inferences in Plaintiff's favor. *Id.* Plaintiff alleges a specific unsafe working condition caused by spills of chemicals, particularly pesticides, in various parts of the store where she worked. Both parties agree that chemicals (including pesticides, auto cleaning products, and hunting products) were spilled in the K–Mart store while Plaintiff worked there. Both Plaintiffs' and Defendant's experts acknowledge certain of these chemicals, particularly the pesticides, would be extremely hazardous and could cause death if ingested in sufficient quantity or if workers were exposed to high concentrations in closed spaces. In both his report and his deposition, Defendant's expert Anthony V. Colucci, Sc.D., discussed the sorts of reactions workers might have to toxic concentrations of pesticides. Colucci opines that if Plaintiff were exposed to concentrations sufficiently high to adversely affect her, other workers should have reported adverse symptoms as well. Pls.' Mem. in Opp'n to Def.'s Mot. Summ. J., Ex.K at 27.

In response to Defendant's motion for summary judgment, Plaintiffs present portions of depositions by two former K–Mart employees who reported adverse symptoms. The first, Patricia Blankenship, last worked at the Beckley K–Mart on May 2, 1990, prior to any reported spills or to Plaintiff's complaints about chemical exposure. Blankenship complained of temporarily losing the sight in one eye, nausea, and headaches, which she attributed to dust from remodeling and use of propane to clean the floors. She knew nothing about any chemical spills and does not say that she reported any complaints to K–Mart or to anyone else. *Id.,* Ex. L. The second employee, William Prunest, worked for K–Mart as a stock man starting from May 1990 to March 1995. Prunest was aware of "Ortho" or Diazinon spills, some of which he cleaned up. While working for K–Mart, Prunest alleges he began to suffer nosebleeds, chest pains, upper leg cramps, high blood pressure, and headaches. However, Prunest does not state that he complained or reported these medical problems to K–Mart or anyone else. *Id.,* Ex. M.

Plaintiff did not participate in cleanup of any of the spills, nor has she described any particular personal exposure to any of the spills beyond observing them. Nevertheless, potentially hazardous chemicals were spilled and at least one other employee complained of symptoms he attributed to spill exposure. Construing all inferences in Plaintiffs' favor, the Court finds and concludes Plaintiffs have raised a genuine issue of material fact as to element one, whether the pesticide and other chemical spills created a specific unsafe working condition.

■ Second, Plaintiffs must provide evidence of a subjective realization and appreciation on the part of the employer of the specific unsafe working condition. Element two has a particularly high proof threshold.

[A] plaintiff attempting to impose liability on the employer must present sufficient evidence, especially with regard to the requirement that the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and the strong probability of serious injury or death presented by such specific unsafe working condition. *This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong possibility of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge.*

*Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 641, 408 S.E.2d 385, 393 (1991) (emphasis added).

■ Here, Plaintiffs' proof fails entirely. K–Mart knew of the spills. Beyond that, Plaintiff presents no evidence of K–Mart's knowledge that these spills created an unsafe working condition (if indeed they did), much

less knowledge of the strong possibility of serious injury or death. OSHA's inspection at Plaintiff's behest produced no such finding. Instead OSHA found no spills and adequate clean-up procedures, adequate hazard communication training, and adequate personal protective equipment. The two workers whose deposition testimony Plaintiff presents do not state they reported either their symptoms or their concerns to K–Mart or to anyone else.

Other than Plaintiff's Workers' Compensation claim (denied), Plaintiff's OSHA complaint (leading to an inspection which found only recordkeeping irregularities), and this civil action, Plaintiff has produced no evidence of any other complaint which would even put K–Mart on notice of a suspected unsafe workplace problem during the time Plaintiff worked at the store.[9] Plaintiff's complaints alone cannot be sufficient to prove Defendant's knowledge of the unsafe working condition; otherwise proof would be no issue for element two because the mere filing of a lawsuit would provide knowledge to any Defendant. Clearly, this is not the statute's intent, nor the *Blevins'* court's interpretation. More is required, and Plaintiffs provide nothing more.

The Court finds and concludes that Plaintiffs have failed to provide any evidence of a required element of their deliberate intention claim: Defendant's subjective realization of an unsafe working condition. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on the issue of deliberate intention.

### C. Fraudulent Concealment

*Count Two* alleges Defendant failed to fully, timely and/or accurately disclose and inform its employees of hazardous workplace conditions and misled, misrepresented, and misinformed its employees, OSHA inspectors, and the West Virginia Workers' Compensation Fund regarding these exposures.

■ Fraudulent concealment is a tort, recognized in West Virginia jurisprudence. Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud. *Pocahontas Mining Co. Ltd. Partnership v. Oxy USA, Inc.*, 202 W.Va. 169, 503 S.E.2d 258, 263 (1998) (citations omitted). Fraudulent concealment requires some affirmative action, "designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim." *Kessel v. Leavitt,* —— W.Va. ——, 511 S.E.2d 720, 763 (W.Va.1998). Fraudulent concealment "may arise when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts." *Id.* (quoting Restatement (Second) of Torts § 550 (1976)).

■ Not a scintilla of evidence supports this claim. The Court has already determined no evidence supports Defendant's subjective realization of an unsafe working condition. Nor have Plaintiffs presented evidence Defendant was ever put on notice of the possibility of such hazard. Thus, there is no evidence that Defendant had any information to conceal. Even if, *arguendo*, Defendant had a duty under OSHA (as Plaintiffs allege) to inform employees of workplace hazards, where there are no hazards, there is no duty. Nor have Plaintiffs presented evidence of any of the affirmative actions alleged in the complaint, to wit, misleading, misrepresenting, or misinforming anyone.[10]

Mere allegations are insufficient in response to a motion for summary judgment to show that there is a genuine issue for trial.

9. Plaintiff produced a September 4, 1995 newspaper clipping, consisting of three paragraphs, which reported some shoppers experienced sore throats and difficulty breathing while shopping at the Beckley K–Mart; however, the Department of Environmental Protection could not determine the source of the problem and the incident, in no obvious way related to chemical or pesticide spills, occurred some twenty (20) months after Plaintiff left K–Mart's employ and two years after chemical spills were last reported.

10. Alleged misrepresentation to the Workers' Compensation Fund is discussed under fraudulent misrepresentation.

Fed.R.Civ.P. 56(e). Accordingly, the Court finds and concludes Plaintiff has failed to establish any element of fraudulent concealment and **GRANTS** Defendant's motion for summary judgment on this issue.

### D. Fraudulent Misrepresentation

■ In *Count Three*, Plaintiff alleges K–Mart, through its agent Kathy Sizemore, intentionally and deliberately misled Workers' Compensation when she completed the employer's portion of Plaintiff's application form and wrote, "No other associates had these symptoms per Ms. Barnhart." [11] West Virginia recognizes a claim "against an employer for damages as a result of the employer knowingly and intentionally fraudulently misrepresenting facts to the Workers' Compensation Fund that are not only in opposition to the employee's claim, but are made with the intention of depriving the employee of benefits rightfully due him." *Persinger v. Peabody Coal Co.*, 196 W.Va. 707, 717, 474 S.E.2d 887, 897 (1996).

The initial inquiry must be whether Defendant misrepresented facts in claiming no other associates had these symptoms (per Ms. Barnhart). As discussed above, Plaintiff has presented coworker Prunest's testimony claiming similar symptoms induced by chemical exposure at the Beckley K–Mart. However, Plaintiffs present no evidence showing K–Mart was ever apprised of Prunest's claims, nor that Prunest (or any other associate, i.e., employee) ever made any claim, complaint, or report of such symptoms, whether or not linked to the spilled chemicals.

Misrepresentation requires knowledge of one thing and misrepresentation of workplace hazards from Plaintiff intentionally inflicted emotional harm on her. Plaintiffs also allege threats by Defendant of retaliation for disclosing alleged hazardous conditions at the store and for filing claims and reports about those conditions. The Court has been presented no evidence of such threats of retalia-

tion. Again, mere allegations are insufficient in response to a motion for summary judgment to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Having previously determined there is no substantiation for Plaintiffs' claims of fraudulent concealment or fraudulent misrepresentation, the Court finds and concludes Plaintiffs' present no evidence of any outrageous conduct by Defendant which would support this claim. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on the issue of intentional infliction of emotional distress by outrageous conduct.

### F. Plaintiff's motion for Rule 37 sanctions

■ Plaintiff moves for sanctions against Defendant pursuant to *Rule* 37(b)(2)(C) for failure to respond to a discovery order.

Plaintiffs argue in the motion and accompanying memorandum that Defendant has failed to fully respond to discovery requests, consisting of (1) Plaintiffs' First Set of Interrogatories and Request for Production of Documents and (2) Plaintiffs' Request for an On-site Inspection (or entry on land). *Rule* 33 provides for Interrogatories to Parties; *Rule* 34 provides for Production of Documents and Things and Entry upon Land for Inspection and Other Purposes. Fed. R.Civ.P. 33, 34.

> [If] a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested, the discovering party may move for an order compelling an answer … or an order compelling inspection in accordance with the request.

Fed.R.Civ.P. 37(a)(2)(B). Plaintiff so moved; that motion was granted September 30, 1998. Defendant had already answered the interrogatories on September 16, 1998. Where objections were appropriate, the grounds therefor were stated with specificity. *See* Fed.R.Civ.P. 33(b). In each case where doc-

---

**11.** In her deposition, Sizemore explained that Barnhart is an employee of K–Mart's Workers' Compensation third-party administrator, Employers Service Corporation, who confirmed that no other employees had made claims related to

Plaintiff's complaints about chemical exposures (or chemical odors or vapors) or claiming symptoms similar to Plaintiff's. Def.'s Mot. Summ. J., Ex. U.

uments were responsive, K–Mart offered to allow Plaintiffs' counsel to review them at a time and place mutually convenient to counsel of record. *See* Fed.R.Civ.P. 34(b). Plaintiffs do not report requesting such a meeting. Defendant supplemented its response on November 10, 1998. Defendant reports searching its records and finding no further documents responsive to interrogatories beyond those already produced.

Plaintiffs now request sanctions pursuant to *Rule* 37(b), failure to comply with order. Plaintiffs argue Defendant failed to answer interrogatories numbers one and four. However, interrogatories one and four have been answered. Pls.' Mot. for Relief and Sanctions ("*Sanctions*"), Ex. 2. Plaintiffs further claim that Defendant "evaded a truthful answer" by providing only a single name of a customer who sued Defendant. *Id.* Plaintiffs provide no evidence of other suits, which would show that providing the single name was evasive.

Plaintiffs' actual complaint is that Defendant's answers could not be the true answers, because Defendant must have documents and records that support Plaintiffs' allegations. Plaintiffs argue that during discovery in the Workers' Compensation case, "employees were disclosed who were known to have suffered from severe and relevant illnesses," *Sanctions* at 5, yet Plaintiffs provide the Court no evidence of these workers or their illnesses (except for coworker Prunest). Plaintiffs also claim employees were identified during that discovery because they died while suffering from illnesses which arose after employment at the Beckley K–Mart. *Id.* at 6. Again, Plaintiffs provide no evidence. Plaintiffs allege that Rita Reed and Dema Smith "were commonly known to have become progressively ill while working at this store" and Dema Smith "was reported to have actually expired in the store." *Id.* Plaintiffs provide no affidavits, deposition testimony, death certificates, or any other admissible evidence for the Court to consider in support of these allegations. Finally, Plaintiffs claim that after the request for an on-site inspection was made, K–Mart began renovations to the ventilation system, which Plaintiffs now claim was to be a "primary focus of the proposed inspection." *Id.* at 3.

Throughout this civil action, the focus of Plaintiffs' allegations of chemical exposure has been the unexplained spills of various gardening, hunting, and automobile products in the store. Now Plaintiffs allege Defendant is altering the new focus, the ventilation system.

The Court amended the initial scheduling order in this case four times at the parties' request, moving the discovery cutoff from March 1, 1998 to May 1st, then to October 10th, and finally to November 2nd. On November 5, 1998 the Court issued a sharply worded Order denying further amendments to the scheduling order.

The Court is troubled by the disturbing allegations made by Plaintiffs, including the allegations that Defendant has withheld evidence. However, at some point Plaintiffs must provide more than a scintilla of evidence in support of these currently baseless and unfounded allegations. Response to motions for summary judgment is that time. Plaintiff has failed to provide evidence of either the allegations in the civil action or the allegations of discovery violations.

### III. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on all issues. Plaintiff's motion for sanctions pursuant to *Rule* 37 is **DENIED**. The Court **ORDERS** this case be **DISMISSED** with prejudice and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.