Charles K. HAMILTON, Plaintiff,

v.

PILGRIM'S PRIDE CORPORATION, Defendant.

No. CIV.A. 2:03 CV 9.

United States District Court, N.D. West Virginia.

March 29, 2004.

Charles K. Hamilton, Ridgeley, WV, Pro se.

Peter G. Zurbuch, Busch, Zurbuch & Thompson, PLLC, Elkins, WV, Thomas E. Ullrich, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, for Defendant.

### ORDER

MAXWELL, District Judge.

It will be recalled that the above-styled civil action was initiated in the Circuit Court of Mineral County, West Virginia, on January 17, 2003, but was removed to this Court by Defendant Pilgrim's Pride Corporation on February 13, 2003. In his Complaint, the Plaintiff, who is proceeding *pro se*, seeks judgment in the amount of $130,000,000.00, against his former employer, Pilgrim's Pride Corporation of Moorefield, West Virginia, for alleged carbon dioxide poisoning.

By Scheduling Order entered May 12, 2003, the Court established an initial phase of discovery within which discovery would be limited to two issues, namely, when the Plaintiff's cause of action accrued and whether the Plaintiff's Complaint was filed beyond the applicable statute of limitations.

On November 3, 2003, a Motion For Summary Judgment and Memorandum In Support thereof were filed with the Court by Defendant Pilgrim's Pride Corporation (Docket No. 48). By Order entered November 14, 2003 (Docket No. 50), the Court advised the Plaintiff of his right to fully respond to Pilgrim's Pride Corporation's Motion For Summary Judgment, including the right to submit affidavits or any other materials which would tend to show that he has stated a cause of action pursuant to the "deliberate intent" portion of the West Virginia Workers' Compensation Act, W. Va.Code § 23–4–2, upon which relief could be granted against Defendant Pilgrim's Pride Corporation; that his claim is not barred by the two-year statute of limitations for personal injury claims set forth in West Virginia Code § 55–2–12; that there is a genuine issue as to any material fact; and that Defendant Pilgrim's Pride Corporation is not entitled to judgment as a matter of law. Additionally, the Court's November 14, 2003, Order expressly advised the Plaintiff that a failure to oppose Pilgrim's Pride Corporation's Motion For Summary Judgment would result in the entry of judgment in favor of said Defendant.

In response to the Court's November 14, 2003, Order, the Plaintiffs Opposition To Defendants Motion for Summary Judgment was filed with the Court on November 19, 2003 (Docket No. 51). Thereafter, Pilgrim Pride's Reply To Plaintiff's Opposition To Defendant's Motion for Summary Judgment was filed with the Court on December 1, 2003 (Docket No. 53).

Defendant Pilgrim's Pride Corporation's Motion For Summary Judgment has now been fully briefed and is mature for disposition. Having carefully reviewed all matters of record in this action, the Court

FINDS that there does not exist a genuine issue as to any material fact and that, accordingly, the Court can and must rule as a matter of law in this matter. Accordingly, the Court **GRANTS** Pilgrim Pride Corporation's Motion For Summary Judgment (Docket No. 48).

### FINDINGS OF FACT

The Court **FINDS** that there is no genuine issue as to any of the following material facts, which facts are taken, verbatim [1], from Pilgrim's Pride Corporation's Statement Of Uncontested Facts (Docket No. 48):

1. In July and August, 1999, Wampler Foods, Inc. operated a poultry processing plant in Moorefield, West Virginia. In January, 2001, Pilgrim's Pride acquired Wampler foods, Inc., and since that date has owned and operated the Moorefield plant.

2. On July 9, 1999, Charles K. Hamilton began employment with Wampler, working as a "stack-off laborer." Mr. Hamilton's job duties required that he remove packaged product from a conveyor belt and stack that product on pallets. Mr. Hamilton worked in various "coolers" in the Moorefield plant, including the "central" and "old" refrigerated coolers. [T. Morris Aff., ¶¶ 3–4].

3. Mr. Hamilton worked third or "night" shift. [Hamilton Dep., p. 13]. His employment with Wampler was very brief. On August 1, 1999, Mr. Hamilton claimed he sustained a back injury, and he never returned to work for Wampler, or Pilgrim's Pride, after that date. [Randolph Dec., ¶¶ 7–11; Hamilton Dep., pp. 11–13].

4. As part of his training as a new employee, Mr. Hamilton was advised of the possible presence of carbon dioxide in some parts of the plant, and of the potential adverse health effects of prolonged exposure to high levels of carbon dioxide. [Hamilton Dep., pp. 14–17].

5. According to Mr. Hamilton, shortly after the beginning of his shift on July 14, 1999, he and his co-worker observed their supervisor, Timothy Morris, taking recordings or measurements of the level of carbon dioxide in the old cooler. [Hamilton Dep., pp. 17–18, 26, 84]. Mr. Hamilton asserts that Morris advised him that the carbon dioxide readings in the old cooler were "6.5" and "high" [Hamilton Dep. p. 18].

6. Mr. Hamilton acknowledges that he knowingly worked in the presence of elevated levels of carbon dioxide. Mr. Hamilton claims that on July 14, 1999, Morris told him and his co-worker, Billy, that they had to work in the old cooler, despite the alleged high carbon dioxide levels, in order to relieve the employees who had been working there. [Hamilton Dep., pp. 17–18; Answer to Defendant's First Interrogatories to Plaintiff Charles Hamilton; Argument to Pilgrim's Pride Contexaul Facts [sic]; Mr. Hamilton's request dated February 14, 2003; Note dated February 14, 2003; Staement [sic] dated February 14, 2003; and Affidavit of Charles K. Hamilton dated June 23, 2003 found collectively as Summary Judgment **Exhibit A**].

7. Mr. Hamilton asserts that he was exposed to carbon dioxide when he was placing lids on containers or tubs of product packed in ice. He says that after working in the old cooler for about 45 minutes on the evening of July 14, 1999, he became dizzy and felt ill, and went, by himself, to the plant's first aid station. [Hamilton Dep., pp. 18–19].

8. No one else, including Mr. Hamilton's co-worker, had any complaints about

---

1. The Court notes that, due to an inadvertent error in numbering, Pilgrim's Pride Corporation's Statement Of Uncontested Facts sets forth only 24 facts when there are, in fact, 25.

exposure to carbon dioxide on the evening of July 14, 1999. [Hamilton Dep., pp. 19, 77–78].

9. The nurse on duty in the plant's first aid department called for an ambulance to transport Mr. Hamilton to Grant Memorial Hospital in Petersburg, West Virginia. [Hamilton Dep., p. 22].

10. Upon arrival at the hospital, Mr. Hamilton was examined by an emergency department physician and released without restriction, with a diagnosis of acute sinusitis. [Hamilton Dep., p. 25].

11. Mr. Hamilton was absent from work from July 14, 1999 through July 16, 1999, for a "sinus infection." [Randolph Dec., ¶ 6].

12. Within weeks, on or about August 1, 1999, Mr. Hamilton complained of a work-related back injury and again sought treatment at Grant Memorial Hospital. When he sought treatment on August 2, 1999 for his claimed back injury, Mr. Hamilton told his treating doctors that he had been "exposed to carbon dioxide at work." [*See* Western Maryland Memorial Health System Emergency Department Flowsheet dated August 2, 1999, Summary Judgment **Exhibit B**].

13. Mr. Hamilton was concerned, in August, 1999, that exposure to carbon dioxide at work might have caused him to suffer some sort of injury to his health. [Hamilton Dep., pp. 61–62].

14. According to Mr. Hamilton, he resigned employment with Wampler in August, 1999, in part because of his health concerns related to the alleged exposure to elevated levels of carbon dioxide. [Hamilton Dep., p. 61].

15. Mr. Hamilton also told a doctor about his possible exposure to carbon dioxide in February, 2000, when he visited "Dr. Shah" for evaluation of alleged blackouts and seizures. [Hamilton Dep., pp. 25–26].

16. In February, 2000, Mr. Hamilton suspected that his purported seizures may be related to his alleged exposure to carbon dioxide in July, 1999. [Hamilton Dep. pp. 39–40].

17. In April, 2000, Mr. Hamilton was hospitalized at Memorial Hospital, Cumberland, Maryland, for evaluation of a possible seizure disorder. [Hamilton Dep., p. 48].

18. Among the tests administered by the physicians during this April, 2000 hospitalization was an MRI. According to Mr. Hamilton, his doctors told him that this April, 2000, MRI showed "two spots" on his brain. [Hamilton Dep., pp. 48–50].

19. At this time, in April, 2000, Mr. Hamilton suspected that carbon dioxide exposure may have caused the "two spots" on his brain. [Hamilton Dep., pp. 50–51, 53].

20. In August, 2000, Mr. Hamilton again was treated at Memorial Hospital, Cumberland, Maryland, for a claimed inability to walk. [Hamilton Dep., p. 53].

21. At the time of this August, 2000 hospitalization, Mr. Hamilton's wife, Kathy, also was concerned and wondered whether the alleged carbon dioxide exposure was related to the brain "damage" which Mr. Hamilton claims is evidenced by the April, 2000, MRI. [Hamilton Dep., pp. 66–67].

22. No physician ever has confirmed that Mr. Hamilton's claimed ailments are related to exposure to toxic levels of carbon dioxide. [Hamilton Dep., pp. 72–73].

23. Mr. Hamilton was aware of the fact that he could have filed a workers' compensation claim for any injuries related to his claimed exposure to toxic levels of carbon dioxide, and has no explanation for his failure to do so. [Hamilton Dep., p. 57].

24. The only reason Mr. Hamilton waited three and one-half years before filing a lawsuit related to the claimed July, 1999, exposure to toxic levels of carbon dioxide, is "just procrastinating, more or less putting things off." [Hamilton Dep., p. 53].

25. Mr. Hamilton has been unsuccessful in procuring an attorney to represent him in this case, despite multiple attempts, "because of the statute of limitations." [Hamilton Dep., pp. 51–52].

## CONCLUSIONS OF LAW

From the text of Rule 56 of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248, 106 S.Ct.

2505; *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## THE PLAINTIFF'S COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

In its Motion For Summary Judgment, Defendant Pilgrim's Pride Corporation argues that Plaintiff Charles K. Hamilton's complaint is barred by the statute of limitations. Specifically, the Defendant argues that the two-year statute of limitations applicable to the personal injury action the Plaintiff seeks to pursue in the above-styled civil action accrued on July 14, 1999. The Defendant argues that the Plaintiff is not entitled to the benefit of the tolling principles of the "discovery rule" since the record before the Court clearly reflects that the Plaintiff knew that he was exposed to carbon dioxide on July 14, 1999; that the Plaintiff knew he was injured at that time; that the Plaintiff knew who injured him; that the Plaintiff knew the entirety of the circumstances surrounding his alleged exposure; and that the Plaintiff is unable, for those reasons, to assert that he was ignorant of the existence of his cause of action.

While maintaining its position that the statute of limitations on the Plaintiff's claims began to run on July 14, 1999, the Defendant asserts that, at the latest, the statute of limitations began to run in August of 2000. In that regard, the Defendant points to the fact that the Plaintiff testified during his September 22, 2003, deposition that when he was treated at Memorial Hospital in Cumberland, Mary-

land, in August of 2000, for an inability to walk, his wife, Kathy, was also concerned and wondered whether the carbon dioxide exposure was related to the brain "damage" which the Plaintiff claims is evidenced by an MRI administered by the physicians at Memorial Hospital during an April 2000, hospitalization.

In addressing the issue of whether the Plaintiff's complaint is barred by the statute of limitations, the Court must first determine the applicable statute of limitations. Because the above-styled civil action was removed to this Court on the basis of diversity jurisdiction, the Court must apply the substantive law of West Virginia and West Virginia's statute of limitations. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) (stating that a federal court in diversity must apply the state statute of limitations). As correctly noted by the Defendant in its Memorandum In Support of its Motion For Summary Judgment, the applicable statute of limitations for personal injury actions such as the one brought by the Plaintiff in the above-styled civil action is set forth in West Virginia Code § 55–2–12(b) (2002), which provides as follows, in pertinent part:

> Every personal action for which no limitation is otherwise prescribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued, if it be for damages for personal injuries; ....

The Defendant is also correct in his assertion that the two-year statute of limitations set forth in W. Va.Code § 55–2–12(b) is the statute of limitations applicable to a deliberate intent action brought under the Workers' Compensation Act. *See Livingston v. K-Mart Corporation,* 32 F.Supp.2d 369, 371 n. 5, (S.D.W.Va.1998).

Having established that the applicable statute of limitations is two years, the Court must now determine when this two-year period began to run. The West Virginia Supreme Court of Appeals has held that the statute of limitations in a personal injury action ordinarily begins to run when the right to bring an action for the personal injury in question accrues, *i.e.,* when the injury is inflicted. *Jones v. Trustees Of Bethany College,* 177 W.Va. 168, 169, 351 S.E.2d 183, 184 (1986) (quoting *Hundley v. Martinez,* 151 W.Va. 977, 985, 158 S.E.2d 159, 164 (1967); *State ex re. Ashworth v. State Road Comm'n,* 147 W.Va. 430, 437, 128 S.E.2d 471, 476 (1962); *Scott v. Rinehart & Dennis Co.,* 116 W.Va. 319, 180 S.E. 276 (1935)). This general rule is, however, subject to certain exceptions, one of which is the discovery rule. The discovery rule was created in an attempt to mitigate the harshness of the statute of limitations and to prevent injustice to an injured person who could otherwise lose his right to sue before he discovered if he was injured or who to sue. *Cart v. Marcum,* 188 W.Va. 241, 244, 423 S.E.2d 644, 647 (W.Va.1992) (quoting *Hickman v. Grover,* 178 W.Va. 249, 252, 358 S.E.2d 810, 813 (1987)). The discovery rule tolls the statute of limitations until a claimant knows or by reasonable diligence should know that he has been injured and who is responsible. *Id.* The discovery rule is applicable to all torts unless there is a clear statutory prohibition of its application. *Id.* at 245, 423 S.E.2d at 648.

In its opinion in the 1997 case of *Gaither v. City Hosp., Inc.,* the West Virginia Supreme Court of Appeals summarized the discovery rule as follows:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may

have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury. 199 W.Va. 706, 715, 487 S.E.2d 901, 909 (1997).

The Defendant argues in its Memorandum In Support of its Motion For Summary Judgment that the Defendant is not entitled to the benefit of the tolling principles of the discovery rule since his claim is among that category of cases described by the West Virginia Supreme Court of Appeals in its opinion in the case of *McCoy v. Miller*, where "an injury or wrong occurs of such a character that a plaintiff cannot reasonably claim ignorance of the existence of a cause of action." 213 W.Va. 161, 578 S.E.2d 355, 360 (W.Va.2003), (quoting *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 712, 487 S.E.2d 901, 907 (W.Va.1997)). Relying on the West Virginia Supreme Court's opinion in the *McCoy* case, the Defendant argues that the burden shifts to the Plaintiff to prove his entitlement to the benefit of the discovery rule and asserts that the Plaintiff is unable to meet this burden. In this regard, the Defendant points out that the Plaintiff acknowledged in his deposition that he has no justification or excuse for waiting for over three and one-half years from the date of his alleged exposure to carbon dioxide to file this civil action. [Hamilton Dep., p. 53].

■ From the undisputed facts in this matter, the Court finds that the applicable two-year statute of limitations began to run as early as July 14, 1999, the date on which the Plaintiff alleges he was exposed to excessive levels of carbon dioxide. In his deposition, the Plaintiff testified that, shortly after the beginning of his shift on July 14, 1999, he and a co-worker observed their supervisor, Timothy Morris, taking recordings or measurements of the level of carbon dioxide in the old cooler and were advised by Mr. Morris that the carbon dioxide readings in the old cooler were "6.5" and "high". [Hamilton Dep., pp. 17–18, 26, 84]. The Plaintiff further testified in his deposition that, after working in the old cooler for about 45 minutes on the evening of July 14, 1999, he became dizzy and felt ill, and that, accordingly, he went to the plant's first aid station, where the nurse on duty called for an ambulance to transport him to Grant Memorial Hospital in Petersburg, West Virginia. [Hamilton Dep., pp. 18–19, 22]. Based on the undisputed facts, the Court finds that on July 14, 1999, the Plaintiff knew that he had been exposed to carbon dioxide; he knew that he had been injured; he knew who had injured him; and he knew the entirety of the circumstances surrounding his alleged exposure to carbon dioxide. With an accrual date of July 14, 1999, the two-year statute of limitations on the Plaintiff's personal injury claims arising from his alleged exposure to excessive levels of carbon dioxide expired on July 14, 2001, a date well before the January 17, 2003, filing of the above-styled civil action.

■ Construing all facts in a light most favorable to the Plaintiff, as the Court must when addressing a motion for summary judgment, however, the Court agrees with the Defendant's assertion that, even if the applicable two-year statute of limitations did not begin to run on July 14, 1999, it began to run, at the very latest, in August of 2000, when the Plaintiff was treated at Memorial Hospital in Cumberland, Maryland, for an inability to walk. In this regard, the Plaintiff testified in his deposition that, at the time of this August, 2000, hospitalization, his wife was also concerned and wondered whether the alleged carbon dioxide exposure was related to the brain "damage" which he claims is evidenced by an MRI performed at Memorial Hospital in April of 2000. [Hamilton Dep., pp. 66–67]. With an accrual date of Au-

gust of 2000, the two-year statute of limitations on the Plaintiff's personal injury claims arising from his alleged exposure to excessive levels of carbon dioxide expired in August of 2002, a date which is also well before the January 17, 2003, filing of the above-styled civil action.

The Court agrees with the Defendant that the Plaintiff, who has admitted that his waiting until January of 2003, to file the above-styled civil action was a result of "procrastination" [Hamilton Dep., p. 53], has not met his burden of establishing an entitlement to the tolling principles of the discovery rule and that, accordingly, the applicable two-year statute of limitations began to run, at the very latest, in August of 2000. Applying the applicable law to the undisputed facts in the above-styled civil action, the Court finds, accordingly, that the Plaintiff's Complaint in the above-styled civil action, which was not filed until January 17, 2003, is time-barred.

### THE PLAINTIFF'S EXCLUSIVE REMEDY IS UNDER THE WORKERS' COMPENSATION ACT, AND HE HAS FAILED TO SATISFY A NECESSARY CONDITION PRECEDENT TO BRINGING A "DELIBERATE INTENT" CLAIM PURSUANT TO SAID ACT

In addition to arguing that the Plaintiff's Complaint is barred by the applicable statute of limitations, the Defendant argues that, because the Plaintiff's alleged injuries arose out of his employment, his exclusive remedy is under the Workers' Compensation Act and that the Plaintiff has not satisfied a necessary condition precedent to the bringing of a "deliberate intent" claim pursuant to said Act, namely the requirement that he first have filed a claim for Workers' Compensation benefits.

In his Complaint, the Plaintiff seeks recovery from his former employer for injuries he alleges he sustained during his employment. It is undisputed that, at all times relevant to this civil action, the Defendant, and its predecessor Wampler Foods, Inc., have subscribed to and paid premiums into West Virginia's Workers' Compensation Fund. [Randolph Dec. ¶ 14].

In West Virginia, employers who subscribe to and pay premiums into the Workers' Compensation Fund assume liability, without fault, for any employment injuries sustained by their employees, in exchange for immunity from lawsuits arising out of any such employment injuries. This immunity from lawsuits is granted by West Virginia Code § 23–2–6 (2003), which provides as follows, in pertinent part:

> Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter.

"[T]he right of the injured employee to workmen's compensation has been substituted in lieu of his cause of action against the negligent employer and this remedy of compensation is an exclusive remedy." *Belcher Administratrix of the Estate of Carl v. Belcher*, 498 F.Supp. 629, 630 (S.D.W.Va.1980).

There is only one exception to the general blanket of immunity provided by West Virginia Code § 23–2–6, and that exception arises only in situations where the employer can be said to have acted with deliberate intention. *See Bell v. Vecellio and Grogan, Inc.*, 197 W.Va. 138, 475 S.E.2d

138 (1996). In this regard, West Virginia Code § 23–4–2(c)(2) (2002) provides as follows, in pertinent part:

The immunity from suit provided under this section and under section six-a, article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention."

Civil actions brought under the foregoing exception are known in West Virginia as "Mandolidis suits", a name taken from *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), the decision of the West Virginia Supreme Court of Appeals that liberalized the definition of "deliberate intention." *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121, 123 (4th Cir.1995).

Pursuant to the immunity provisions of W. Va.Code § 23–2–6, the Defendant in the matter now before the Court is entitled to immunity from the instant suit, unless the Plaintiff can demonstrate that said Defendant acted with "deliberate intention" to produce the injury he complains of. In its Motion For Summary Judgment, the Defendant argues that, irregardless of whether the Defendant is able to demonstrate that it acted with "deliberate intention" to produce the injury he complains of, he is foreclosed from bringing a deliberate intent action against it because he has never pursued a claim for Workers' Compensation benefits.

■ The Defendant is correct in its assertion that the filing of a claim under the Workers' Compensation Act is a prerequisite to bringing a deliberate intent action. In this regard, the United States District Court For The Northern District Of West Virginia has noted:

the plaintiff in a deliberate intention action is only able to recover "excess damages over the amount received or available" under the workers' compensation scheme. *See* § 23–4–2(b). The plaintiff

must pursue a workers' compensation action rather than simply file a civil action based on deliberate intent and forego filing his or her claim under the workers' compensation statute. *Ball v. Joy Mfg. Co.*, 755 F.Supp. 1344, 1358 (S.D.W.Va.1990), *aff'd,* 958 F.2d 36 (4th Cir.1991), *cert. denied* 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992). Thus, a deliberate intention action, and the amount of recovery available thereunder, is inexorably linked with a workers' compensation action and the workers' compensation laws will play a role in determining whether the plaintiff will prevail in the deliberate in*tention action. See Houston, 597 F.Supp. at 991; Almanza,* 802 F.Supp. at 1479.

*Knox v. Laclede Steel Company,* 861 F.Supp. 519, 522–523 (N.D.W.Va.1994).

It is undisputed that the Plaintiff has not pursued a claim for Workers' Compensation benefits arising out of the injury he alleges he sustained on July 14, 1999, even though he was aware that he had the right to do so. [Hamilton Dep., pp. 56–67]. For that reason, the Court finds that the Plaintiff cannot proceed in the above-styled civil action on a deliberate intent claim because he has not filed the requisite Workers' Compensation claim.

Accordingly, for the foregoing reasons, it is

**ORDERED** that Defendant Pilgrim's Pride Corporation's Motion For Summary Judgment (Docket No. 48), shall be, and the same is hereby, **GRANTED**.

In light of the award of Summary Judgment in favor of Defendant Pilgrim's Pride Corporation, it is further Ordered that the following Motions shall be, and the same are hereby, **DENIED** as moot:

1. Plaintiff's Motion For Default Judgment Against Defendant Pilgrim's Pride (Docket No. 18);

2. Plaintiff's Request To Seek Relief Of Time—Bar Statute Of Limitations (Docket No. 29);

3. Plaintiff's Motion To Quash (Docket No. 38);

4. Defendant Pilgrim Pride Corporation's Motion To Compel Discovery (Docket No. 40);

5. Plaintiff's Motion To Quash Subpoena (Docket No. 42);

6. Plaintiff's Motion For Leave Of Court To Amend Complaint (Docket No. 49); and

7. Plaintiff's Motion To Compel (Docket No. 57).

It is further

**ORDERED** that this civil action shall be, and the same is hereby, **DISMISSED** with prejudice and **STRICKEN** from the docket of the Court. It is further

**ORDERED** that the Clerk shall enter judgment for the Defendant. It is further

**ORDERED** that, if the Plaintiff should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure.

The Clerk of Court is directed to send copies of this Order to the *Pro Se* Plaintiff and to counsel of record for the Defendant.