No. 19-0043 – *State of West Virginia ex rel. Gallagher Bassett Services v. The Honorable Carrie Webster, Judge of the Circuit Court of Kanawha County; Robin Lusk; and Old Dominion Freight Line, Inc.*

**FILED**
**June 12, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's decision insofar as it upholds statutory law that prohibits a cause of action by an employee against a third-party administrator for workers' compensation discrimination. *See* W. Va. Code § 23-2C-21(a) (2017).[1] I also concur with the majority's decision to recognize that a workers' compensation fraud cause of action against a third-party administrator does not fall within the protections of that statute. However, I dissent to the majority's subsequent dismissal of the fraud claim based upon the two-year statute of limitations[2] when that issue was not properly before this Court on a writ of prohibition.

---

[1]West Virginia Code § 23-2C-21(a) provides:  "(a) No civil action may be brought or maintained by an employee against a private carrier or a third-party administrator, or any employee or agent of a private carrier or third-party administrator, who violates any provision of this chapter or chapter thirty-three of this code." *But see Barber v. Sedgwick Claims Mgmt Servs. Inc*., No. 3:14-27349, 2016 WL 6211714,  at *4 (S.D. W. Va. Oct. 24, 2016) (federal district court determining that the plaintiff's workers' compensation fraud claim against third-party administrator is not barred by West Virginia Code § 23-2C-21(a), finding that defendant "recognizes, the 'statute applies only to violations of Chapters 23 and 33 of the West Virginia Code.'.  .  .  The Court has already determined that Plaintiff makes a plausible claim for common law fraud under *Persinger*, which falls outside the statutory violations and thus outside the scope of the statute's applicability. . . .").

[2]S*ee* W. Va. Code § 55-2-12 (2016) (establishing two-year statute of limitations).

As I just recently stated in my dissenting opinion to *State ex rel. Universal Underwriters Insurance Co. v. Wilson*, ___ W. Va. ___, 825 S.E.2d 95 (2019) (Workman, J., dissenting):

> In my almost twenty-three years as an appellate court judge, one thing I have learned is that the development of new law by a judicial body is a lot better when, like a good stew, it is cooked slowly and thoroughly. The full processing of a new or novel legal issue by its being fully considered by a lower court, a lower court making a ruling, the parties then briefing and arguing the issue at the appellate level results in much sounder law and much fairer results than this Court embarking on creating new law and then granting prohibition because the lower court failed to follow the (as-yet) established law.

*Id*. at ___, 825 S.E.2d at 115. The same can be said about legal issues that hinge on facts, as is the case when a discovery rule issue is raised.

The majority relied on *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009), in finding the workers' compensation fraud claim to be time-barred, but they overlooked key holdings concerning the discovery rule, which necessarily contemplate initial rulings be made by the circuit court, not this Court.[3] Specifically, the Court held in syllabus

---

[3]Although not raised by the parties, assuming, arguendo, that Gallagher Bassett's statute of limitations argument is properly before this Court, Ms. Lusk's amended complaint arguably relates back to the filing of her original complaint thereby further negating the petitioner's arguments in this regard. *See* W. Va. R. Civ. P. 15(c); *see also* Syl. Pt. 4, *Brooks v. Isinghood*, 213 W. Va. 675, 584 S.E.2d 531 (2003) ("Under Rule 15(c)(3) of the West Virginia Rules of Civil Procedure [1998], an amendment to a complaint changing a defendant or the naming of a defendant will relate back to the date the plaintiff filed the
(continued...)

point two of *Dunn* that "[t]he 'discovery rule' is generally applicable to *all torts*, unless there is a clear statutory prohibition to its application." *Id.* at 46, 689 S.E.2d at 258, Syl. Pt. 2 (emphasis added). We further held that

> "[i]n tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows,[4] or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the

---

[3](...continued)
original complaint if: (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) the defendant either knew or should have known that he or she would have been named in the original complaint had it not been for a mistake; and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.").

[4]According to *Dunn*,

> Under the discovery rule set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997), whether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

225 W. Va. at 46, 689 S.E.2d at 258, Syl. Pt. 4.

conduct of that entity has a causal relation to the injury."
Syllabus Point 4, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706,
487 S.E.2d 901 (1997).

255 W. Va. at 46, 689 S.E.2d at 258, Syl. Pt. 3 (footnote added). Finally, the Court adopted

a five-part test to be applied in order to determine whether a claim is time-barred, as follows:

First, the court should identify the applicable statute of
limitation for each cause of action. Second, the court (or, if
questions of material fact exist, the jury) should identify when
the requisite elements of the cause of action occurred. Third, the
discovery rule should be applied to determine when the statute
of limitation began to run by determining when the plaintiff
knew, or by the exercise of reasonable diligence should have
known, of the elements of a possible cause of action, as set forth
in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W. Va.
706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not
entitled to the benefit of the discovery rule, then determine
whether the defendant fraudulently concealed facts that
prevented the plaintiff from discovering or pursuing the cause
of action. Whenever a plaintiff is able to show that the defendant
fraudulently concealed facts which prevented the plaintiff from
discovering or pursuing the potential cause of action, the statute
of limitation is tolled. And fifth, the court or the jury should
determine if the statute of limitation period was arrested by
some other tolling doctrine. *Only the first step is purely a
question of law; the resolution of steps two through five will
generally involve questions of material fact that will need to be
resolved by the trier of fact.*

255 W. Va. at 46, 689 S.E.2d at 258, Syl. Pt. 5, in pertinent part (emphasis added).

Notably absent from the majority's discussion of the statute of limitations issue

is the language emphasized, which holds that "the resolution of steps two through five will

generally involve questions of material fact that will need to be resolved by the trier of fact."

4

*Id.* The need for full factual development when the discovery rule is relied upon is neither a new nor novel concept. Moreover, this Court has found that resolution of this issue by the trier of fact necessary where a claim of fraud—in this case workers' compensation fraud—is being asserted. As the Court has held,

> [w]here a cause of action is based on tort *or on a claim of fraud*, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time *is a question of fact to be answered by the jury*.

Syl. Pt. 3, *Stemple v. Dobson*, 184 W. Va. 317, 400 S.E.2d 561 (1990) (emphasis added).

Under *Dunn*, the critical and determinative factor for ascertaining whether the two-year statute of limitations has run or has been tolled is the third factor, which requires application of the discovery rule "to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action[.]" 255 W. Va. at 46, 689 S.E.2d at 258, Syl. Pt. 5, in part (quoting *Gaither*, 199 W. Va. at 708, 487 S.E.2d at 903, Syl. Pt. 4, in pertinent part).

5

The majority with little analysis or discussion of the facts as pled in the amended complaint, which must be taken as true,[5] simply finds that

> Ms. Lusk would have known, or by reasonable diligence should have known, of the alleged fraudulent misrepresentation at the latest by the date of the October 9, 2015 evidentiary hearing. In fact, Ms. Lusk would have been put on notice of the alleged misrepresentation and the fact that it was a basis for the proposed denial of her workers' compensation coverage as early as June 26, 2015. This was the date of the letter from Gallagher Bassett denying her workers' compensation coverage based, at least in part, on the allegations that she falsified her log records—an allegation that was communicated to her in the June 22, 2015 phone call terminating her employment. Clearly, she possessed the facts relevant to assert her fraudulent misrepresentation claim against Gallagher Bassett no later than October 9, 2015.

Perhaps the majority's findings on this issue are so "clear" because it turns a blind eye to conflicting factual arguments, which are based upon the allegations in the amended complaint. Ms. Lusk maintains that she is entitled to rely on the discovery rule and that under that rule her claim against Gallagher Bassett was timely filed. Ms. Lusk contends that she did not know that her employer, Old Dominion Freight Line, Inc. ("Old Dominion"), was going to blame its third-party administrator, Gallagher Bassett, for making all the decisions against her in the administration of her workers' compensation claim, and for the

---

[5]*See John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978) ("The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the formal sufficiency of the complaint. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true.").

6

denial of her workers' compensation claim, which serve as the foundation of her workers' compensation fraud claim. Underlying this contention were the following allegations in Ms. Lusk's amended complaint:

62.     Defendant Old Dominion reported to its workers' compensation carrier or third-party administrator, Defendant Gallagher Bassett, that Plaintiff had falsified her log book and was thus not acting within the course and scope of her employment when she was injured while performing pre-shift activities on Defendant's tractor-trailer while at Defendant's terminal.

63.     Defendant's workers' compensation insurer or third-party administrator charged with handling Plaintiff's workers' compensation claim under West Virginia law, Defendant Gallagher Bassett, made a claim decision, acting in a quasi-judicial capacity, that Plaintiff's injury was not compensable because Defendant's report that at the time she was injured she was not acting within the course and scope of her employment. Nevertheless, Defendant Gallagher Bassett knew or should have known that its actions were clearly contrary to the workers' compensation laws of the State of West Virginia at the time it denied Plaintiff's compensability.

64.     Defendants, and particularly Defendant Gallagher Bassett, knew with certainty that Plaintiff was acting within the course and scope of her employment when she was injured while engaged in pre-shift activities on Defendant's tractor-trailers while at Defendant's terminal.

. . . .

67.     Defendants knew, or by the exercise of reasonable care, should have known that, Plaintiff was within the zone of her employment when she was injured and that they had no legal right to falsely inform the workers' compensation system that Plaintiff was not acting within the course and scope of her employment and was thus non-compensable.

7

68. . . . Defendant Gallagher Bassett knowingly acted upon the false report that Plaintiff had intentionally falsified her log book when she made no entry at all, in order to avoid the anticipated financial exposure that it would incur by reason of Plaintiff's serious work-related injury, by using the false report that she had falsified her log book and thus was not within the course and scope of her employment to deny compensability for her injury, which was a pretext not only for termination of her employment but also as pretext for avoiding its obligations to Plaintiff under the workers' compensation laws of the State of West Virginia.

69. As a direct and proximate result of Defendants' fraud, as aforesaid, Plaintiff has been damaged by the loss of valuable workers' compensation indemnity and medical expense benefits, by the loss of her medical and disability insurance, and she has suffered undue pain and suffering, mental anguish, aggravation, inconvenience, and annoyance, and was forced to incur legal fees and expenses to vindicate rights that were undeniably hers under the law.

Ms. Lusk maintained that she was not placed on notice of Gallagher Bassett's actions in the denial of her claim until Katrena Parker, Old Dominion's workers' compensation manager, was deposed on August 10, 2017.

According to Ms. Lusk, Ms. Parker testified that Old Dominion did not make *any* decision to deny Ms. Lusk's workers' compensation claim. Ms. Parker stated that that decision was Gallagher Bassett's and, more precisely, it was Cathy Reedy, Gallagher Bassett's adjuster, who made the decision to deny Ms. Lusk compensability based on information that Old Dominion provided to Gallagher Bassett. Before the deposition of Ms. Parker, Ms. Lusk claimed before the circuit court that Old Dominion "never before asserted

8

that Gallagher Bassett Services made all of the decisions with respect to denial of the Plaintiff's workers' compensation claim."

Thereafter, Ms. Lusk contended before this Court that she made significant attempts to depose Gallagher Bassett's adjuster, Cathy Reedy, going to back to her first attempt on March 31, 2017.[6]   Ms. Lusk maintained in her brief before this Court that she made repeated attempts to depose Ms. Reedy, which were met with opposition from both Old Dominion and Gallagher Bassett, including having a subpoena issued in the State of Pennsylvania to depose Ms. Reedy, and then having to defend a motion to quash filed by Old Dominion, and joined in by Cathy Reedy of Gallagher Bassett.  According to Ms. Lusk, she "was thwarted in each instance until this Court denied the Petitioner's request for a stay of all proceedings herein.  Ms. Reedy was finally deposed on January 26, 2019."

As is readily discernable from the facts that the majority finds exists relative to the statute of limitations issue, as opposed to those alleged by Ms. Lusk, there is an undeniable dispute as to material facts developed thus far, which necessarily requires further factual development and resolution by a trier of fact.  Indeed, this is exactly what the circuit court determined in its August 27, 2018, order denying Gallagher Bassett's motion to dismiss:

---

[6]This first attempt stemmed from Ms. Lusk's request for attorney fees after Gallagher Bassett withdrew its appeal related to her workers' compensation claim.  Ms. Lusk ultimately received $7,500 in attorney fees from Gallagher Bassett.

9

At this stage of the litigation, the Court denies the Motion to Dismiss. The statements from Plaintiff's counsel, the contents of the June 26, 2015, letter [referring to Gallagher Bassett's letter denying Ms. Lusk's claim] and the interaction between Plaintiff and Gallagher Bassett may bar Plaintiff's claims against Gallagher Bassett. As this Court noted at oral argument, that may be a compelling argument for applying the statute of limitations at the summary judgment stage.

Yet, rather than allowing that factual development to occur below, Gallagher Bassett pursued what is essentially an appeal of the circuit court's denial of its Rule 12(b)(6) motion, dressed up as a petition for a writ of prohibition. *See* W. Va. R. Civ. P. 12(b)(6); *see also State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 246, 460 S.E.2d 54, 60 (1995) ("Although for obvious reasons the defendants resist categorizing this prohibition as an appeal of the denial of a motion to dismiss a claim for failure to state a cause of action, essentially that is what this proceeding involves. Accordingly, we hold that ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to West Virginia Rules of Civil Procedure 12(b)(6) is interlocutory and is, therefore, not immediately appealable. Thus, the defendants may not indirectly raise this issue by seeking a writ of prohibition in order to preclude the trial judge from compelling discovery."). Nevertheless, this Court has previously found that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [should be] rarely granted." *John W. Lodge Distributing Co., Inc.*, 161 W. Va. at 606, 245 S.E.2d at 159. More specifically, "[t]he trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not

10

merely on the pleadings." *Id.* (citing Wright & Miller, Federal Practice and Procedure: Civil § 1216 (1969)).

Moreover, even under a prohibition analysis, Gallagher Bassett's petition fails because this Court has repeatedly recognized that the following factors are to be examined in ascertaining whether a circuit court has no jurisdiction or has exceeded its jurisdiction, which would require this Court to intercede by exercising this extraordinary remedy:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

The majority, while setting forth the *Hoover* factors in the standard of review, fails to offer any reasoning as to how Gallagher Bassett meets those factors. *See id.*

11

Gallagher Bassett had another adequate means of seeking relief from the circuit court's denial of its Rule 12(b)(6) motion by the filing of an appeal. Indeed, any damage or harm that Gallagher Bassett might suffer from the circuit court allowing this case to go forward for purposes of further discovery is obviously correctable in a direct appeal. Most importantly, given our law that the discovery rule necessarily depends upon the development of the facts and the resolution of disputed facts by the trier of fact, the circuit court's order denying a Rule 12(b)(6) motion to dismiss due to its determination that factual development was warranted is not clearly erroneous as a matter of law. *See Berger*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4; *see State ex rel. State Auto Prop. Ins. Cos. v. Stucky*, No. 15-1178, 2016 WL 3410352, at *5 (W. Va. June 14, 2016) (memorandum decision) ("Under our law, '[i]n the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury.' *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 714-15, 487 S.E.2d 901, 909-10 (1997). Consequently, the question is proper for the court only '[w]here there are undisputed facts from which only one conclusion may be drawn[.]' *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1115 (N.D. Ill. 1998).").

Based upon the foregoing, I respectfully concur, in part, and dissent, in part, to the majority's opinion.