# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 8, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**RONALD HARDY, ET AL.,**
**Plaintiffs Below, Petitioners**

**vs.)  No. 22-ICA-123** (Circuit Ct. McDowell Cnty. Nos. 21-C-41, 42, 43, 44, 48, 51 & 52)

**3M COMPANY, ET AL.,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Ronald Hardy, Ralph Manuel, Edgel Dudleson, Ricky Miller, James Cruey, Mark Scott, and Gary Scott (hereinafter "petitioners") appeal the Circuit Court of McDowell County's order dated September 7, 2022. Respondents 3M Company, Mine Safety Appliances Company, LLC, American Optical Corporation, Cabot CSC Corporation, Cabot Corporation, Eastern States Mine Supply Company, and Raleigh Mine and Industrial Supply (hereinafter "respondents") each individually or jointly filed a response in support of the circuit court's order.[1] The issue on appeal is whether the circuit court erred in granting respondents summary judgment finding that petitioners failed to bring their respective claims within the two-year statute of limitations.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the

---

[1] Petitioners are represented by Lonnie C. Simmons, Esq., Robert M. Bastress III, Esq., Samuel B. Petsonk, Esq., and Bren J. Pomponio, Esq. Respondent 3M Company is represented by Bryant J. Spann, Esq., Robert H. Akers, Esq., and Elizabeth L. Taylor, Esq. Respondent Mine Safety Appliance Company, LLC, is represented by Benjamin L. Bailey, Esq., Eric B. Snyder, Esq., Nicholas S. Johnson, Esq., John A. Budig, Esq, and Joshua I. Hammack, Esq. (admitted pro hac vice). Respondents American Optical Corporation, Cabot CSC Corporation, and Cabot Corporation are represented by Marc E. Williams, Esq., Thomas M. Hancock, Esq., Kendra L. Huff, Esq., and Alexander C. Frampton, Esq. Respondents Raleigh Mine and Industrial Supply and Eastern States Mine Supply Company are represented by Glenn A. Huetter, Jr., Esq.

1

applicable law, this Court finds no substantial question of law and no prejudicial error.[2] For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners Ronald Hardy, Ralph Manuel, Edgel Dudleson, Ricky Miller, James Cruey, Mark Scott, and Gary Scott are coal miners who were diagnosed with pulmonary massive fibrosis ("PMF"), sometimes referred to as complicated pneumoconiosis or complicated black lung. PMF is a purely latent disease that can develop over time due to exposure to coal, rock, and/or sand dust. Prior to their PMF diagnoses, each of the petitioners were diagnosed with an earlier stage of black lung disease and received some form of state worker's compensation benefits for black lung disease, in addition to several petitioners qualifying for and receiving federal black lung benefits.

Respondent 3M Company ("3M") is a manufacturer of respirators that the petitioners used while in the coal mines. Respondents American Optical Corporation, Cabot CSC Corporation and Cabot Corporation are manufacturers of respirators worn by petitioners Edgel Dudleson and Gary Scott.[3] Respondent Mine Safety Appliances Company, LLC,[4] ("MSA"), Raleigh Mine and Industrial Supply, Inc. ("Raleigh"), and Eastern States Mine Supply Company ("Eastern") are distributors of respirators. Each of the petitioners filed separate products liability actions against either 3M and/or the other respondents in the Circuit Court of McDowell County. The circuit court consolidated the seven separate cases for purposes of discovery and summary judgment.

**Ronald Hardy**

Ronald Hardy worked as a coal miner between 1968 and 2001. Mr. Hardy testified in his deposition that he developed lung problems while working at Island Creek Coal from 1995 to 2001. Mr. Hardy received conflicting medical reports regarding whether or not he suffered from PMF before the United States Office of Workers' Compensation Programs

---

[2] This Court notes that oral argument was held on October 11, 2023, however under Rule 19 of the Rules of Appellate Procedure a memorandum decision affirming the circuit court's order is appropriate.

[3] Respondents American Optical Corporation, Cabot CSC Corporation, and Cabot Corporation filed a joint response brief. Their brief addresses only facts regarding Edgel Dudleson and Gary Scott, as the other petitioners did not assert tort actions against these respondents.

[4] Respondent Mine Safety Appliance Company, LLC, addresses claims brought by Ralph Manuel, Edgel Dudleson, Mark Scott, Gary Scott, and James Cruey, as the remaining plaintiffs did not assert tort actions against this respondent.

("OWCP"), which initially resolved the conflicting factual records, and concluded that Mr. Hardy suffered from PMF.

On June 4, 2018, Mr. Hardy applied for federal black lung benefits. On July 31, 2018, Dr. Forehand diagnosed Mr. Hardy with black lung. On October 2, 2018, the OWCP issued a schedule for the submission of additional evidence. The employer developed contrary medical evidence indicating that Mr. Hardy did not suffer from PMF or any form of black lung. On April 26, 2019, Robert Tarver, M.D., authored a B-reading, which gave a second opinion of an x-ray taken of Mr. Hardy on July 31, 2018. Dr. Tarver read the x-ray as negative for black lung. Gregory Fino, M.D., authored a B-reading of an x-ray taken on December 12, 2018, which he read as negative for black lung. On March 10, 2020, Kim Adcock, M.D., authored a B-reading of an x-ray taken on February 20, 2020, which she read as negative for any black lung.

Following the three negative B-readings, Mr. Hardy was unsure as to whether he had black lung or PMF. However, the Department of Labor then began sending Mr. Hardy monthly benefits and his black lung medical benefits card. Mr. Hardy first received federal black lung benefits on or about October 15, 2019.

On May 10, 2022, the federal black lung benefits case was heard by an ALJ. On September 29, 2022, the ALJ issued a decision that awarded federal black lung benefits to Mr. Hardy. No appeal was made, and the decision became final thirty days later.

On July 2, 2021, nearly a year earlier, Mr. Hardy met with counsel regarding a potential products liability action based on the 3M respirators that he had worn while in the mines. On August 18, 2021, Mr. Hardy filed a complaint in the Circuit Court of McDowell County, which initiated the underlying action. Mr. Hardy brought claims for tort liability, negligence, and fraud.

The circuit court concluded that by June 4, 2018, when Mr. Hardy applied for federal black lung benefits and July 31, 2018, when Dr. Forehand diagnosed him with black lung, Mr. Hardy should have known of the possibility of a claim against the dust mask and respirator manufacturer defendants and the Distributor Defendants more than two years before he filed his complaint. The circuit court found that at the latest the statute of limitations began to run on July 31, 2018, when Dr. Foreman diagnosed Mr. Hardy with lung problems.

**Ralph Manuel**

Petitioner Ralph Manuel worked as a coal miner from about 1981 to January 19, 2021. According to Mr. Manuel, he wore respirators manufactured by 3M but did not always wear a respirator when he worked around coal mine dust.

3

In 1999, Mr. Manuel was diagnosed with silicosis and awarded a 5% PPD award under workers' compensation, although he had no measurable impairment. In 2003, the West Virginia legislature abolished the 5% award as a remedy in worker's compensation, because it had been based on a finding of pneumoconiosis with no measurable impairment. *See* W. Va. Code § 23-4-6A (2005). However, for many years prior to 2003, 5% awards were issued to miners who had x-ray evidence of black lung disease without any impairment from the retention of dust in their lungs. However, Mr. Manuel continued to work in the coal mines without receiving any accommodations. In 2009, the Occupational Pneumoconiosis Board notified Mr. Manuel that he had black lung.

In 2018, Mr. Manuel applied for federal black lung benefits. He was again diagnosed with black lung on July 10, 2018, after telling a physician that he had sputum "most days" and that he had suffered shortness of breath for more than twenty years. Mr. Manuel then became a Part 90 miner, allowing him to work under a reduced dust standard.[5] In early October of 2020, Mr. Manuel was diagnosed with PMF, or stage 2 complicated pneumoconiosis.

On May 21, 2021, Mr. Manuel met with counsel to discuss a potential products liability claim against respondent 3M. On August 19, 2021, Mr. Manuel filed a Complaint in the Circuit Court of McDowell County, initiating this matter. The circuit court concluded that Mr. Manuel reasonably should have known of the possibility of a claim against 3M more than two years before he filed his Complaint. The circuit court held that at the latest the two-year statute of limitations began to run on July 10, 2018, when he was diagnosed with black lung.

**Edgel Dudleson**

Petitioner Edgel Dudleson worked as a coal miner for at least nineteen years between 1976 and 1999. According to Mr. Dudleson, he wore respirators designed by respondents MSA and American Optical Corporation ("AO") about 60-70% of the time that he worked around coal mine dust at various mining operations. In 1996, Mr. Dudleson filed a state workers' compensation claim, but it was subsequently denied. However, in 2000, he received a 5% PPD award through workers' compensation based on occupational pneumoconiosis with zero impairment, but he continued to work in the coal mines without any accommodations and the following year that award was modified to 10%.

Mr. Dudleson received conflicting reports as to whether he suffered from PMF before the OWCP resolved the conflicting factual records by concluding that Mr. Dudleson

---

[5] Any miner who has evidence of the development of pneumoconiosis is able to work as a Part 90 miner in an area of the mine where the average concentration of respirable dust is below the applicable standard.

did suffer from PMF. CT scans from November 30, 2018, and June 14, 2019, showed that Mr. Dudleson had complicated pneumoconiosis or black lung. On June 12 or 14, 2018, Mr. Dudleson applied for federal black lung benefits. On March 27, 2019, the OWCP denied Mr. Dudleson's application, finding that he had not met the grounds for eligibility. On June 10, 2020, the OWCP reversed its prior decision and concluded that Mr. Dudleson did suffer from PMF. The decision became final thirty days later pending the responsible operator's appeal to the Office of Administrative Law Judges, and on August 15, 2020, Mr. Dudleson received his first black lung benefits. Following the award decision, a number of medical experts continued to dispute whether or not Mr. Dudleson suffered from PMF. On March 1, 2022, Robert Cohen, M.D., reviewed images taken from a CT scan on June 14, 2019, as well as his prior report of July 26, 2019, regarding the same images; he also reviewed the reports of Danielle Seaman, M.D., regarding CT scans dated November 30, 2018, and June 4, 2019. Dr. Cohen disagreed with Dr. Seaman's lack of finding of large opacities and reaffirmed his prior opinion that Mr. Dudleson's CT scan indicated the presence of complicated pneumoconiosis or PMF. On June 23, 2022, Leonard Go, M.D., stated "I believe to a reasonable degree of medical certainty that Mr. Dudleson's years of exposure to coal mine dust led to the development of clinical pneumoconiosis, specifically simple and complicated coal workers' pneumoconiosis."

On July 2, 2021, Mr. Dudleson met with counsel and learned that respondents allegedly designed and marketed a defective respirator, which he had worn while in the coal mines. On August 19, 2021, Mr. Dudleson filed a complaint in the Circuit Court of McDowell County initiating this matter. The circuit court concluded that when Mr. Dudleson first applied for federal black lung benefits, he "reasonably should have known of the possibility of a claim against the dust mask and respirator Manufacturer defendants and Distributor defendants more than two years before he filed his Complaint." The circuit court found that, at the latest, the two-year statute of limitations began to run on June 14, 2019, when he was diagnosed with complicated pneumoconiosis.

**Ricky Miller**

Petitioner Ricky Miller worked as a coal miner between 1970 and 1982. Mr. Miller testified that he wore a respirator at all times while in the mines because he had seen older miners coughing and spitting up dust, and he wanted to protect his lungs. On October 24, 2013, the Occupational Pneumoconiosis Board informed Mr. Miller that he had black lung. In 2013, Mr. Miller applied for state workers' compensation benefits and the Occupational Pneumoconiosis Board found that he had simple occupational pneumoconiosis, granting him a 20% award for state workers' compensation benefits based on pneumoconiosis. In 2017, Mr. Miller received another letter from the Occupational Pneumoconiosis Board, again informing him of his occupational pneumoconiosis diagnosis, granting him an additional 5% award. The Board found that he had reported shortness of breath for nine years, as well as chronic cough for ten years. On December 17, 2018, Mr. Miller filed for federal black lung benefits.

On July 9, 2021, Mr. Miller met with counsel to discuss a potential products liability claim against 3M, on the basis that 3M had designed and manufactured defective respirators. On August 19, 2021, Mr. Miller filed a products liability action in the Circuit Court of McDowell County.

The circuit court concluded that by October 24, 2013, when Mr. Miller was informed by the Occupational Pneumoconiosis Board that he had black lung, and at the latest by December 18, 2017, when he applied for federal black lung benefits, that Mr. Miller reasonably should have known of the possibility of a claim against the respondents more than two years before filing his Complaint.

**James Cruey**

Petitioner James Cruey worked as a coal miner for at least thirty years in the period between 1968 and 1999. According to Mr. Cruey, he wore respirators manufactured by respondent 3M, but he did not wear those respirators at all times when he worked around coal mine dust. Mr. Cruey also stated that he wore respirators manufactured by respondent MSA.

Mr. Cruey was awarded PPD worker's compensation benefits for silicosis in 1985. In 2004, Mr. Cruey initially applied for federal black lung benefits on June 15, 2004, providing physician x-rays that showed coal workers pneumoconiosis ("CWP"). Mr. Cruey continued working his normal job duties for many years after receiving benefits. In 2016, Mr. Cruey was diagnosed with "interstitial lung disease with impairment gas exchange." On September 22, 2020, Mr. Cruey was awarded federal black lung benefits because he was determined to suffer from totally disabling pulmonary or respiratory impairment arising from his coal mine dust exposure.[6] Prior to the award of black lung benefits on September 22, 2020, Mr. Cruey received conflicting reports from physicians regarding whether or not he suffered from black lung disease.

On June 30, 2021, Mr. Cruey met with counsel to discuss a possible claim against 3M for defective respirators. On September 3, 2021, Mr. Cruey filed a complaint in the Circuit Court of McDowell County against the respondents. The circuit court concluded that by 2016, when Mr. Cruey was diagnosed with "interstitial lung disease with impairment gas exchange," he reasonably should have known of the possibility of a claim against the distributor defendants and respirator manufacturer defendants more than two years before he filed his complaint.

---

[6] Mr. Cruey was initially denied federal black lung benefits in 2004, however, he re-filed his final application on August 24, 2016, and was approved on September 22, 2020, with an effective date going back to August 24, 2016.

**Mark Scott**

Petitioner Mark Scott worked as a coal miner between 1980 and 2017. According to Mr. Scott, he primarily wore respondent MSA's Dustfoe 77 respirator from 1990 to 1994. Mr. Scott also stated he only used other masks or respirators a few times because he started chewing and quit wearing dust masks or respirators. In 1998, Mr. Scott was awarded 10% PPD under workers' compensation due to silicosis. On December 20, 2017, Mr. Scott filed for federal black lung benefits. On April 19, 2018, Mr. Scott was diagnosed with PMF. On November 18, 2018, the OWCP determined that Mr. Scott did not suffer from PMF. However, on December 11, 2019, the OWCP determined that Mr. Scott did in fact have PMF.

On July 8, 2021, Mr. Scott met with counsel and learned that 3M allegedly designed and marketed defective respirators. On September 9, 2021, Mr. Scott filed a complaint in the Circuit Court of McDowell County initiating this matter.

The circuit court concluded that by 1998, when Mr. Scott was diagnosed with silicosis, and at the latest by December 20, 2017, when he applied for federal black lung benefits, that he reasonably should have known of the possibility of a claim against the respondents more than two years before he filed his complaint.

**Gary Scott**

Petitioner Gary Scott worked as a coal miner for at least thirty-eight years between 1975 and 2020. According to Mr. Scott, he wore respirators manufactured by respondent 3M, but he did not wear those respirators 100% of the time that he worked around coal mine dust. Mr. Scott stated he regularly wore the respirators between 1975-1982. Mr. Scott was initially diagnosed with black lung in 1998. Similar to Edgel Dudleson and Mark Scott, Gary Scott initially received a 5% workers' compensation PPD award for the black lung diagnosis with no measurable impairment. However, Mr. Scott continued working without accommodations after receiving the award.

Mr. Scott's employer disputes that he suffers from PMF. On January 10, 2018, National Institute of Occupational Safety and Health ("NIOSH") notified Mr. Scott by letter that his lungs had been damaged by dust and that he had Category A complicated pneumoconiosis. This letter advised him to seek medical treatment as soon as possible. Also on January 10, 2018, Mine Safety and Health Administration ("MSHA") sent Mr. Scott a separate Part 90 letter advising him that he had enough coal worker's pneumoconiosis to work in a low dust area. MSHA's letter also advised him that his diagnosis could affect his legal rights, and that he should consult with a doctor or lawyer. Mr. Scott retired in 2020. On July 12, 2021, the OWCP issued a proposed decision and order awarding federal black lung benefits to him based on a finding of PMF.

On July 19, 2021, Mr. Scott met with counsel to discuss 3M's respirators. On September 9, 2021, Mr. Scott filed a complaint in the Circuit Court of McDowell County. The circuit court concluded that by January 10, 2018, when NIOSH and MSHA notified Mr. Scott that he had "category A complicated pneumoconiosis," he reasonably should have known about the possibility of a claim against 3M more than two years before filing his complaint.

**The Circuit Court Decision Below**

In the Circuit Court of McDowell County, the seven separate cases were consolidated by the circuit court for purposes of discovery and summary judgment. After discovery was completed, the respondents filed separate motions for summary judgment, seeking to have all seven complaints dismissed on the grounds that they were barred by the applicable statute of limitations. On August 15, 2022, a hearing was held on respondents' motions for summary judgment. By order entered September 7, 2022, the circuit court granted summary judgment for respondents, concluding that each of the petitioners filed their actions outside of the two-year statute of limitations. The circuit court noted in its order that every petitioner was able to name the manufacturer of the dust masks and respirators they used or were able to specifically describe the dust masks or respirators.

Additionally, the circuit court went on to apply the five-step test discussed below, as set out in Syllabus Point 5 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).[7]

---

[7] In Syllabus Point 5 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009), the Supreme Court of Appeals held that to determine whether an action is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the

8

The circuit court stated that where an individual knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, the individual has an affirmative duty to further and fully investigate the facts surrounding the potential breach. Further, the court stated the statute of limitations begins to run when an individual has knowledge of the fact that something is wrong and not when he or she knows of the *particular* nature of the injury. The court found that the date at which each petitioner should have objectively and reasonably known something was wrong was the earlier of the date at which each petitioner was awarded more than 5% *de minimis* disability compensation for a chronic dust-based lung injury or was medically diagnosed with any form of impairment resulting from the inhalation of coal, rock, and sand dust; or the date at which they applied for federal black lung benefits. Lastly, the circuit court found that there was no evidence that 3M had concealed product defects in any way that would prevent petitioners from connecting their lung injuries to 3M products during the two years immediately prior to filing the lawsuit. It is from this order that the seven petitioners now appeal.

This Court is guided by the following standard of review: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "In reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is 'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42, 829 S.E.2d 35, 42 (2019) (quoting *Fayette Co. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 2014)). The Supreme Court of Appeals of West Virginia has stated:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rules of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable.

---

plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. . . .

9

Syl. Pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1994). Thus, [i]f there is no genuine issue as to any material fact summary judgment should be granted[,] but such judgment must be denied if there is a genuine issue as to a material fact." Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

On appeal petitioners argue numerous assignments of error, which will each be addressed. First, petitioners argue that the circuit court erred in granting summary judgment by concluding that petitioners, who were coal miners diagnosed with latent pulmonary disease, either knew or should have known that the respirators they wore while working in the coal mines caused each relevant pulmonary injury where: (1) the West Virginia Supreme Court of Appeals repeatedly has held that when the statute of limitations begins to run is a question of fact; (2) the discovery rule tolled the statute of limitations to the date when the plaintiff knew or should have known of the elements of a possible cause of action and is a question of fact; and (3) fraudulent concealment tolls the statute of limitations where the fraud has prevented the plaintiff from knowing of his or her cause of action to the date when the plaintiff learns of the fraudulently concealed facts and is a question of fact. We disagree.

West Virginia Code § 55-2-12 (1959) provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought: (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries. . .." The West Virginia Supreme Court of Appeals has repeatedly held that "the statute of limitations begins to run when a plaintiff has knowledge of the fact that something is wrong, and not when he or she knows the particular nature of the injury." *Goodwin v. Bayer Corp.*, 218 W. Va. 215, 221, 624 S.E.2d 562, 568 (2005) (citations omitted). Determining the statute of limitations in a products liability case is set forth as follows:

> In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product had a causal relation to his injury.

Syl. Pt. 1, *Hickman v. Grover*, 178 W. Va. 249, 358 S.E.2d 810 (1987).

Upon a plenary review of the parties' arguments and undisputed facts, it is clear that no genuine issue of material fact exists that would preclude an entry of summary judgment in respondents' favor. It is undisputed that petitioners knew the risks of a coal mining career from the outset of their careers and that coal mining dust could cause black lung. Further, petitioners knew the specific respirators used throughout their careers, and the dates on which they were either diagnosed with some form of black lung, black lung itself, or when they filed for federal benefits for black lung disease. Thus, there is no merit in petitioners'

10

assignment of error that when the statute of limitations begins in to run is a factual inquiry for the jury, where the facts are undisputed, and the only question left is purely legal.[8]

Next, petitioners argue that the circuit court failed to properly apply the discovery rule, which would have tolled the statute of limitations.[9] Petitioners assert that in any tort case, the person has to know that he or she suffered an injury or disease that resulted from the fault of the other party; and when the medical evidence is in dispute as to whether the plaintiff has suffered an injury, the holdings in this case by the circuit court are premature. We disagree.

The Supreme Court of Appeals has stated in determining if the discovery rule would toll the statute of limitations:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, *Gaither v. City Hosp. Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997).

Further, the Supreme Court of Appeals has stated:

> [W]hether a plaintiff "knows of" or "discovered" a cause of action is an objective test. The plaintiff is charged with

---

[8] *See Collins v. Mine Safety Appliances Co.*, No. 21-0621, 2022 WL 10084174 (Oct. 17, 2022) (unpublished memorandum decision). There, the Supreme Court affirmed the lower courts grant of summary judgment for the same type of claims that were brought in the case before us. Although that case was handled in an unpublished memorandum decision, this Court finds the analysis persuasive and that it provides guide for what appears to be well settled law in the State. The determination of the bar for statute of limitations is not always a jury question, and when the facts are undisputed the only question left is purely legal. *See Coffield v. Robinson,* 245 W. Va. 55, 857 S.E.2d 495 (2021); *see also State ex rel. Gallagher Basset Serv. Inc. v. Webster*, 242 W. Va. 88, 829 S.E.2d 290 (2019).

[9] Petitioners also argue that this is a question of fact for the jury. However, for the same reasons stated under this Court's analysis for the first assignment of error, we give no merit to petitioners' arguments on this point.

11

knowledge of the factual rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

Syl. Pt. 4, in part, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

The circuit court held that the relevant date in these cases for each of the petitioners to objectively and reasonably know that something was wrong is the date that each of them was awarded more than 5% *de minimis* disability compensation for a work-related, dust-based chronic lung injury; or was medically diagnosed with any form of lung impairment resulting from their inhalation of coal, rock, and sand dust; or applied for federal lung benefits. We agree with this conclusion. Here, petitioners knew at the time they received compensation, were medically diagnosed with a lung impairment, or applied for federal black lung that they had suffered an injury putting them on notice. Further, it is not disputed that petitioners knew the exact respirators they wore during the time periods that they worked as coal miners. Lastly, petitioners knew the risks associated with coal mining and that wearing respirators while in the mines was important to protect their health.

Additionally, petitioners argue that respondents fraudulently concealed facts which prevented them from discovering or pursuing the potential cause of action, thus the statute of limitations should have been tolled.[10] Again, we disagree.

Under step four of *Dunn*, "if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." Syl. Pt. 5, in part, 225 W. Va. 43, 689 S.E.2d 255 (2009). "Fraudulent concealment involves the concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.* at 52, 689 S.E.2d at 264 (citation omitted). While a product manufacturer simply indicating that their product is good or effective may constitute a misrepresentation, that does not constitute fraudulent concealment. Here, there is no evidence in the record that respondents concealed facts that prevented the petitioners from discovering or pursuing their cause of action. All the petitioners knew the exact respirators they wore and that they were diagnosed with some form of lung impairment years before filing suit. Therefore, petitioners have failed to show that there was some form of fraudulent concealment that would have tolled the statute of limitations.

---

[10] Petitioners also argue that this is a question of fact for the jury. However, for the same reasons stated under this Court's analysis for the first assignment of error, we give no merit to petitioners' arguments on this point.

Lastly, petitioners argue that the circuit court erred in rejecting the pure latent disease rule applicable in toxic tort cases, where the plaintiff may develop an initial latent exposure-related disease, but later allegedly develops a second latent exposure-related disease, which gives rise to a new claim that is not time-barred by the initial disease. Petitioners assert that the onset of PMF or complicated pneumoconiosis creates a separate actionable injury in tort under West Virginia law. Petitioners cite *Jones v. Trustees of Bethany College*, 177 W. Va. 168, 351 S.E.2d 183 (1986), where the West Virginia Supreme Court of Appeals recognized that the discovery rule tolls the limitations period in products liability cases involving "pure latent injury" because the onset of the injury is "not sufficiently pronounced" to put a plaintiff on notice that he has been injured by the defective product. *See Id*. The Supreme Court stated:

> Courts have expanded the discovery rule to product liability cases dealing with chemicals, drugs, asbestosis, and products like Dalkon Shield. The common denominator in these cases is that the product often causes injury only after a length of period of exposure or the injury surfaces only a considerable period of time form the date of exposure. Because the injury initially is not sufficiently pronounced to put plaintiff on notice that he has been injured, courts concluded that the statute of limitations does not being to run until the plaintiff is aware of the injury or through reasonable diligence should have been aware of the injury.

*Id.* at 170, 351 S.E.2d at 185. Again, we disagree.

Here, whether the injury is silicosis, black lung, PMF or CWP, it is all relatively the same and can occur the same way, which is from exposure to coal, rock, and/or sand dust. All of the aforementioned health conditions revolve around a lung impairment. While arguments can be made that CWP and PMF are either synonymous or distinct, this Court finds it unnecessary to determine that dispute.[11] The injuries here do not give rise to a new

---

[11] While it is generally thought that "[t]here are two forms of black lung: simple, which is known as coal workers' pneumoconiosis ("CWP"), and complicated, which is known as progressive massive fibrosis ("PMF")," exactly how one can end up with a diagnosis of PMF differs; some research indicates PMF can result from exposure to silica, however, exposure to coal dust and silica often occur simultaneously. *See* Patrick Charles McGinley*, Climate Change and The War on Coal: Exploring the Dark Side*, 13 Vt. J. Envtl. L. 255, at n. 207 (2013); *see generally* David N. Weissman, *Progressive Massive Fibrosis: An Overview of the Recent Literature* (Pharmacol Ther. December 2022).

13

claim that is not time-barred because they are all related and occur from coal mining. Unlike in toxic tort cases, where the injury initially is not sufficiently pronounced to put the plaintiff on notice that he or she has been injured, here any diagnosis of something relative to a lung impairment or a dust exposure related injury put petitioners on notice that the respirators they wore were defective. Petitioners, in this case, had knowledge of the fact that something was wrong when they were first awarded any workers' compensation benefits, diagnosed with any form of lung impairment, or filed for federal black lung benefits.

As pointed out by the circuit court in its order, coal miners make significant contributions to the economy and community throughout the state and country, and the job has not only been demanding, but it can result in serious debilitating adverse health conditions. However, there is a two-year statute of limitations that must be met in order to bring suit for petitioners' claims. Here, petitioners failed to bring their requisite claims within that two-year statute of limitations. Thus, their claims are time barred under West Virginia Code § 55-2-12.

Accordingly, we affirm the Circuit Court of McDowell County's order dated September 7, 2022.

Affirmed.

**ISSUED:** November 8, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

14